**GRACO ROBOTICS, INC., Appellant,**

v.

**OAKLAWN BANK, Appellee.**

No. 06–94–00120–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 29, 1995.

Decided Dec. 28, 1995.

Rehearing Overruled Feb. 20, 1996.

Mike A. Hatchell, Ramey & Flock, Tyler, James N. Haltom, Patton, Haltom, Roberts, Texarkana, John E. Sullivan, Dallas, for appellant.

John R. Mercy, Atchley, Russell, Waldrop, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

GRI sued Oaklawn for breach of an escrow agreement executed to ensure GRI's payment for construction work at Red River Army Depot. GRI alleged that the bank breached the escrow agreement, breached its fiduciary duty, and committed fraud, negligence, negligent misrepresentation, and conversion. The jurors found that the bank breached the contract and committed some of the torts. Because the jurors also found that conditions precedent to the bank's performance had not occurred, and because they found no tort damages, the trial court rendered a take-nothing judgment.

GRI appeals, alleging that the trial court erred: in rendering a take-nothing judgment on the breach of contract claim based on the jurors' findings that the bank breached the contract, but that the conditions precedent had failed to occur; in rendering a take-nothing judgment on the tort issues because GRI proved tort damages as a matter of law and because the jurors' finding of no tort damages was against the great weight and preponderance of the evidence; by instructing a verdict against GRI on its conversion claim; and in admitting in evidence deposition testimony taken in another lawsuit.

Oaklawn Bank has assigned cross-points, alleging that the court erred: in denying its motion to withdraw deemed admissions; in finding that the deemed admissions established the existence of a valid escrow agreement because evidence controverting the admissions was introduced without objection at trial; in not granting the bank a judgment because GRI elected to pursue an inconsistent remedy by obtaining a judgment on the same claim in Michigan; and by failing to give the bank a $419,000.00 credit on any judgment in this case because GRI had previously received that sum in satisfaction of its damages.

We reverse the judgment and render judgment for GRI.

The U.S. Army contracted with Mahon, Inc. of Saginaw, Michigan to build a $2.6 million vehicle paint booth and curing oven at Red River Army Depot near Texarkana. John Frimberger was Mahon's principle owner. Walter House, Red River project engineer, designed the project and administered the contract. The project was to have a manual conveyor line, Line A, and a robotic conveyor line, Line B. Throughout 1985 and 1986, Mahon worked with Graco, Inc., of Minneapolis, Minnesota, and Graco Robotics, Inc., a subsidiary owned eighty percent by Graco, Inc. GRI, having never worked with Mahon, requested that an escrow agreement be executed making the bank the escrow agent to receive and pay out the payments to be earned. GRI submitted a draft of the escrow agreement to Mahon, which passed it on to the bank. The bank says it made significant changes in the draft agreement, compiled a Schedule A that listed all the vendors that would be subject to the agreement, and then sought approval from all the vendors. This draft agreement was signed September 25, 1985, by bank officer Gary McCauley and by Frimberger. The bank argues that the escrow agreement never took effect because not all of the vendors approved it. Because of deemed admissions, however, the court found that the escrow agreement became effective on July 26, 1985.

Mahon assigned all its contract payments to the bank. The escrow agreement set this procedure for release of funds: Red River would send contract payments to the bank. Vendors would present to Mahon invoices corresponding to the payments set out in Schedule A. Mahon would present to the bank and the vendors written approval for the payments. The bank was to then pay the vendors and itself by cashier's check as set out in Schedule A. Schedule A listed Graco's payment schedule as follows:

Line A—pumping equipment payable within 30 days after acceptance by Red River Army Depots (sic) Project Engineer.

Line A  $120,000.00

Line B—pumping equipment payable within 30 days after acceptance by Red River Army Depots (sic) Project Engineer.

Line B  $602,500.00

During the first half of 1986, GRI installed equipment at Red River. Between April and July 1986, GRI invoiced Mahon for $650,250.00, in two installments. The bank never paid GRI because it contended that Red River never accepted the work as required by Schedule A of the escrow agreement. From July 1985 to September 1986, Red River sent contract payments to the bank as escrow agent, and the bank placed them in two accounts in the name of Mahon, Inc. The funds were never escrowed. Instead they were disbursed, some by cashier's check to vendors listed on the bank's list of vendors, and some to other parties not identified as vendors. Some of the funds were transferred directly to Mahon, either to a money market checking account at Oaklawn or to a Mahon account in Michigan. When McCauley, for the bank, received checks from Red River, he simply deposited them in the two accounts in Mahon's name and then disbursed them on instructions from Frimberger or someone else at Mahon.

In September 1986, after GRI had delivered most of the required equipment, it still had not been paid. Graco, Inc.'s chief financial officer, Roger King, went to Texarkana in October to meet with bank officials. He discovered that the bank had already disbursed the contract funds. GRI then removed some computer boards from the equipment at Red River to disable the equipment; in effect, it walked off the job. That

same month, King and Frimberger met to discuss GRI's return to the project. Mahon paid GRI approximately $100,000.00. King told Mahon to rescind its assignment of funds to the bank and to execute a new assignment for the remaining funds available under the contract, about $200,000.00 in retainage. King prepared and Frimberger signed three letters, dated October 15, 1986. The first directed the bank to pay to GRI all amounts held by the bank under that agreement. The second, which King cosigned, directed the bank to account for Red River money it received pursuant to Mahon's assignment. The third, with an interlineation reflecting Mahon's direct payment of $100,-000.00 to GRI, directed the bank to pay $550,250.00 pursuant to GRI's invoices of April 25, 1986 and July 17, 1986. King on October 21, 1986, on Graco, Inc.'s letterhead, mailed these three letters to the bank. In November 1986, the bank placed a hold on Mahon's account and informed GRI it would forward all future deposits to GRI. GRI received no more funds.

In January 1987, GRI sued Mahon and its guarantor, Genevieve Frimberger, in Michigan. The Michigan court gave GRI permission to sue Oaklawn Bank in Texas, and it brought suit in April of 1987, alleging breach of contract and various torts. The case was tried to a jury in late May 1994. At the close of GRI's case in chief, the court granted directed verdicts for the bank on various causes of action, including conversion. GRI requested one jury question, which the court denied, before the court submitted the charge to the jury.[1]

Because of deemed admissions, the court considered the escrow agreement effective as a matter of law. The jurors found that the bank breached the contract, that $550,250.00 would compensate GRI for its contract damages, and that $280,000.00 was a reasonable attorney's fee, but that conditions precedent to the bank's obligation to perform under the escrow agreement failed to occur. The jurors also found for GRI on the questions of breach of fiduciary duty, fraud, negligence, and negligent misrepresentation, but found no damages.

As a threshold matter, we determine if the bank's motion to dismiss should be granted for the reason that after the suit was filed GRI allegedly assigned all of its rights and interests in the cause of action to Graco, Inc. There was testimony that such an assignment had been made, but no assignment was offered in evidence.

■ A litigant may assign his claim or interest in a pending action. TEX.PROP.CODE ANN. § 12.014 (Vernon 1984 & Supp.1996). Although an assignor may not maintain in his own right a claim he assigned after suit is brought on it, the assignee may maintain the suit in the assignor's name, and the assignee is not even a necessary party. *Texas Machinery & Equip. Co. v. Gordon Knox Oil & Exploration Co.*, 442 S.W.2d 315 (Tex.1969); *Ferguson–McKinney Dry Goods Co. v. Garrett*, 252 S.W. 738 (Tex.Comm'n App.1923, judgm't adopted); *see also Bay Ridge Util. Dist. v. 4M Laundry*, 717 S.W.2d 92 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Fort Worth & Denver Ry. Co. v. Ferguson*, 261 S.W.2d 874 (Tex.Civ.App.—Fort Worth 1953, writ dism'd). The rule is not changed by TEX.PROP.CODE ANN. § 12.014. That statute simply provides that an assignment may be made and that a record of it may be filed with the papers of the case. *See Mitchell, Gartner & Thompson v. Young*, 135 S.W.2d 308, 311 (Tex.Civ.App.—Fort Worth 1939, writ ref'd) (relating to predecessor statute). Nor does the holding in *River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165 (Tex.App.—Houston [1st Dist.] 1992, writ denied), conflict with the rule. The rule applied in that case was that after an assignment the assignor may not bring or maintain suit in *its own right.* Moreover, the case of *Duke v. Brookshire Grocery Co.*, 568 S.W.2d 470 (Tex.Civ.App.—Texarkana 1978, no writ), involved an assignment *before* suit was brought. Thus, this case is properly maintained, and the motion to dismiss is overruled.

---

1. At a hearing on GRI's motion for new trial on August 15, 1994, GRI tried unsuccessfully to offer jury questions and instructions. GRI ultimately filed the questions and instructions with the court on October 11, 1994.

■ The trial court submitted Question No. 1 in which it asked the jurors, "Did Oaklawn Bank fail to comply with the Escrow Agreement of July 26, 1985?" The jurors answered "Yes." The court also submitted Question No. 11, which read:

Have the conditions precedent to Oaklawn Bank's obligation, if any, to perform under the escrow agreement occurred:

Conditions precedent to an obligation to perform are acts or events that are to occur after the contract is made and that must occur before there is a right to immediate performance and before there can be breach of contractual duty.

The conditions precedent under the escrow agreement are:

a. Proceeds from the contract between Mahon, Inc. and Red River Army Depot must be delivered to Oaklawn Bank before any disbursement of payments;

b. Graco identified in Schedule A of the escrow agreement must present to Mahon, Inc. invoices that correspond to payments as set forth in Schedule A;

c. Mahon, Inc. must present to Oaklawn Bank written approval for payment;

It is your duty to interpret the following language of the agreement:

"... acceptance by Red River Depots (sic) project Engineer."

You must decide its meaning by determining the intent of the parties at the time of the agreement. Consider all the facts and circumstances surrounding the making of the agreement, the interpretation placed on the agreement by the parties, and the conduct of the parties. Any doubts as to the meaning must be resolved against the party who selected the language

Answer "Yes" or "No"

Answer: <u>NO</u>

GRI contends that the jurors' answer to Question No. 1 entitled it to judgment. It also argues that all the conditions were met as a matter of law, so the answer to Question No. 11 is immaterial. It further argues that

the court erred in even submitting, and in then failing to disregard, Question No. 11 because the question misapplies the law of contract, since the bank's prior breach of the escrow agreement excused GRI's lack of compliance. Moreover, it argues the jury findings are in irreconcilable conflict because the breach of contract finding presupposes the satisfaction of any conditions precedent. It also complains because the court erred in overruling its request to include all conditions precedent in Question 1.

■ In reviewing jury findings for conflict, the threshold question is whether the findings concern the same material fact. *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980). A court may not strike down a jury answer on the ground of conflict if there is any reasonable basis on which the apparently conflicting answers can be reconciled. *Id.* The court must reconcile apparent conflicts in a jury's findings if reasonably possible in light of the pleadings and evidence, manner of submission, and other findings considered as a whole. *Id.* Where the issues admit of more than one reasonable interpretation, that which avoids a conflict in the answers is generally adopted. *Id.*

The jurors found that the bank breached the escrow agreement, but also found that the conditions precedent to performance had not occurred. The trial court found no conflict in those answers because, although the bank failed to comply (Question No. 1), it was not obligated to comply (Question No. 11).

■ A better construction of the escrow agreement, however, is that the "conditions precedent" are not conditions precedent to any liability under the escrow agreement, but are merely conditions for payment.[2] The bank had other contractual duties under the escrow agreement, notably preserving the escrow funds, that is, not paying them out until authorized by the agreement. The jurors may have found that, although GRI had not met the conditions for the bank to pay GRI, the bank failed to comply with its obligation to preserve the funds. The bank, in

---

2. True conditions precedent are conditions that must occur in order for the contract itself to come into effect or for an obligation to arise.

*Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1 (Tex.1976)

fact, did not release the funds in accordance with the agreement. It did not pay vendors with cashier's checks and did not require written payment orders from Mahon. At times, it paid funds directly to Mahon.

GRI also argues that the bank's material breach in not disbursing money in accordance with the agreement allowed GRI to consider the contract at an end and, instead of performing under the contract, sue for the benefit of the bargain.

When a party materially breaches a contract, the nonbreacher may treat the contract as ended and cease performance. *Morgan v. Singley,* 560 S.W.2d 746, 748 (Tex. Civ.App.—Texarkana 1977, no writ). The nonbreacher may then sue for the benefit of the bargain. *El Paso & S.W. R. Co. v. Eichel & Weikel,* 130 S.W. 922, 940 (Tex.Civ. App.1910, writ ref'd), *appeal dism'd,* 226 U.S. 590, 33 S.Ct. 179, 57 L.Ed. 369 (1913). When a party to the contract fails to perform his obligation, he may not thereafter enforce the remaining terms of the contract. *Atlantic Richfield Co. v. Long Trusts,* 860 S.W.2d 439, 447 (Tex.App.—Texarkana 1993, writ denied). Where one of the parties refuses to perform the duties and obligations required of him, the other party need not perform the useless act of tendering performance. *Laredo Hides Co. v. H & H Meat Prods. Co.,* 513 S.W.2d 210, 220 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

The jurors found that the bank breached the escrow agreement. The bank breached the agreement when it failed to preserve contract moneys for GRI. The breach may have occurred in July 1985, when the bank improperly paid escrow moneys to Mahon. The breach also could have occurred in May 1986, when the bank let Mahon have the first moneys paid for Graco Robotic's work. At this point, GRI was entitled to treat the agreement at an end and sue for breach. *Shaw v. Kennedy, Ltd.,* 879 S.W.2d 240, 247 (Tex.App.—Amarillo 1994, no writ).

The bank claims that GRI's argument confuses the doctrine of excusing performance of mutually dependent covenants, *Morgan v. Singley,* 560 S.W.2d at 749, with the affirmative defense of waiving the performance of conditions precedent, *Ames v. Great Southern Bank,* 672 S.W.2d 447, 449 (Tex.1984). The rule regarding mutual covenants, however, applies with equal force to conditions precedent. A repudiation or breach by one party entitles the other to damages without performing or tendering performance of acts that would otherwise have been conditions precedent. 4 CORBIN ON CONTRACTS § 977 (1951), and cases there cited. And mutual conditions will be considered dependent rather than independent unless the contrary intention clearly appears. *Price v. Appalachian Resources Co.,* 496 S.W.2d 136 (Tex.Civ.App.—Tyler 1973, no writ).

The language of a contract will be given a reasonable construction, if possible, rather than an unreasonable construction. *National Sur. Corp. v. Western Fire & Indem. Co.,* 318 F.2d 379, 386 (5th Cir.1963). Where a contract is susceptible to more than one construction, the court will adopt the one that is rational, reasonable, and probable, and that will result in a contract that prudent parties would naturally adopt. *Id.*

The effect of the trial court's construction of the contract is that the bank had no duty to perform until GRI met the conditions, i.e., that the bank did not even have a duty to preserve the escrowed funds until after GRI met the conditions for payment. But to hold there was no obligation to preserve the funds until payment of the funds was authorized would render the escrow agreement meaningless. The very purpose of an escrow arrangement is to preserve the funds so they will be available for disbursement when payment is authorized. A more reasonable construction of the escrow agreement here is that the bank had no duty to pay out the funds until GRI met the conditions, but that as soon as it signed the escrow contract it had a duty to preserve the funds and hold them until payment to the vendors was authorized. When it breached the contract by not performing its duties, GRI was entitled to treat the contract as ended and to sue for the benefit of the bargain.

The bank argues that to impose a preservation obligation on it in favor of GRI would conflict with *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex.1969), in which the court held that in the absence of a written escrow agreement the escrow agent owes a fiduciary duty of preservation only to the funds' owner, here Mahon, and thus the bank owed no preservation duty to GRI. This case, however, deals not with breach of fiduciary duty but with breach of a written contract, entered into specifically for GRI's benefit.

In summary, although the jurors found that conditions for the bank's obligation to perform had not occurred, those conditions referred to the bank's payment obligation, not to its preservation obligation. As the bank breached the agreement by failing to preserve the funds until the payment obligation arose, GRI was entitled to judgment for damages resulting from the breach.

In other points of error GRI contends that the trial court erred in: refusing to award damages to it for the torts found by the jury to have been committed by the bank, in instructing a verdict against GRI on its conversion cause of action, and in allowing into evidence a deposition that was allegedly hearsay. In view of our disposition of the first point of error and our rendition of judgment for GRI on its breach of contract claim, and because GRI concedes in this appeal that it seeks no additional damages on its tort claims than it sought on its contract claim, these additional points of error are now immaterial and it is not necessary that we rule on them. It is necessary, however, that we rule on the bank's cross-points.

The bank contends in its first cross-point that the trial court erred in denying its motion to withdraw the deemed admissions because the requests for admissions were timely answered. It also contends in its second cross-point that the court erred by finding the deemed admissions established as a matter of law because evidence controverting the admissions was introduced without objection at the trial.

■■■■ Requested admissions are deemed admitted unless, within thirty days after service of the request, the party to whom the request is directed serves a written answer or objection. TEX.R.CIV.P. 169(1). The court may permit withdrawal of deemed admissions on a showing of good cause *if* it finds that the party relying on the deemed admissions will not be unduly prejudiced *and* that presentation of the merits of the action will be subserved thereby. *Id.*

■■■■ The trial court has broad discretion in deciding whether to allow the withdrawal of deemed admissions. *Employers Ins. of Wausau v. Halton*, 792 S.W.2d 462, 464 (Tex.App.—Dallas 1990, writ denied). Its ruling will be set aside only if there is a clear abuse of discretion. *Crime Control, Inc. v. RMH–Oxford Joint Venture*, 712 S.W.2d 550, 552 (Tex.App.—Houston [14th Dist.] 1986, no writ). A court abuses its discretion when it acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■■■ GRI mailed to the bank's counsel its requests for admission on December 22, 1987. The bank says it received them on December 28, 1987. The bank contends that it forwarded its response on January 27, 1988, the date shown on the certificate of service. The bank was unable, however, to produce a certified mail receipt to verify mailing. The bank's attorneys testified that their records showed the responses had been mailed. In October 1988, GRI told the bank's counsel it had received no response and considered the matters deemed admitted. The bank's counsel then forwarded a copy of the bank's response to GRI. The bank moved to withdraw the deemed admissions on June 19, 1989. The court finally heard the matter in January 1993.[3] The bank eventually filed the answers with the

---

**3.** The bank blames the delay on changes in courts and judges. The suit was filed originally in the 202nd District Court of Bowie County. When Honorable Bill Peek became presiding judge of that court, a conflict arose because he was a member of the firm serving as GRI local counsel. The case was transferred to the 5th District Court.

court on October 11, 1994. At issue are deemed admissions in which the bank admits the existence of an escrow agreement and that it was escrow agent for GRI.

The trial court agreed with the bank's contention that having a jury decide the admitted issues would better serve the interests of justice and that the bank may have shown good cause for withdrawal of the deemed admissions because of the development of new evidence [4] and the certificate of service dated January 7, 1988,[5] but it found that allowing the bank to withdraw the admissions would unduly prejudice GRI because it would have to go back and try to develop the evidence some five years after the fact.

We cannot say that the trial court's finding that GRI would be unduly prejudiced by withdrawing the admissions was an abuse of its discretion.

The bank argues that GRI waived the admissions because it failed to object to testimony contrary to the admissions. *Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989).

■ The first fifteen admissions dealt with the authenticity of the escrow agreement and the genuineness of the signatures. During GRI's cross-examinations of McCauley the following exchange occurred:

Q. Is there a signature on there above the line that says, "Oaklawn Bank?"

A. Yes.

Q. Whose signature is that?

A. I do not know the answer to that question.

Oaklawn argues this evidence puts the authenticity of the document in question and that GRI therefore waived the admission.

McCauley's statement is not an explicit denial that the signature is his, and thus it did not put GRI on notice that it was controverting the authenticity of the document. Consequently, GRI cannot be held to have waived the admission that the document was valid.

■ The bank also argues that GRI waived the admission that "Oaklawn Bank acted as an escrow agent for Graco [Robotics, Inc.]" by introducing a copy of an escrow agreement in which Graco, Inc. was identified as the "Graco" entitled to bank payment.

The bank says that after it received the draft agreement it made substantial changes, and that Mahon approved the changes. The bank's draft of Schedule A listed all the vendors and identified Graco as being in Minneapolis, Minnesota, thereby referring to the Minneapolis-based Graco, Inc. GRI, a Delaware corporation, has offices in Livonia, Michigan. GRI submitted this version of the escrow agreement as a trial exhibit. Neither GRI nor Graco, Inc. signed this version. The bank also argues that even though it admitted acting as an escrow agent, because the admission did not reference the July 26, 1985 escrow agreement that GRI approved, the admission does not tie the specific agreement to GRI.

The bank argues that it is not clear whether it was dealing with Graco, Inc., a pumping equipment maker, or GRI, a robotics equipment maker. It alleges that Graco, Inc. submitted the first draft of the agreement to Mahon. Mahon returned the draft to King at Graco, Inc. with a Schedule A that referenced "pumping equipment" and "robotics equipment." In another version, which "Graco" signed as approved, Schedule A referenced only "pumping equipment," suggesting

---

4. McCauley at his deposition on April 19 and 20, 1990, told GRI counsel he believed the signature on the July 26, 1985 agreement was forged. GRI argues that McCauley at least twice before the deposition admitted under oath the signature was his, once in the bank's late response to admissions and then in the bank's response to GRI's second set of interrogatories. There, the bank acknowledged the signature was McCauley's but that he had no independent recollection of the signature's date.

5. The court in its letter said the certificate of service for the responses was dated January 7, 1988, whereas the certificate was dated January 27. GRI argues the response is late even if mailed on January 27. Its requests were served by mail on December 22, 1987, thus the response was due thirty-three days later, or January 24. Because January 24 was a Sunday, the responses were due Monday, January 25, 1988, and the purported January 27 mailing was late.

that Graco, Inc., not GRI, was entitled to payment.

The bank also argues that uncontroverted evidence shows Mahon negotiated with both GRI and Graco, Inc. in connection with the agreement; that Graco, Inc. employees signed Schedule A; that GRI referred to itself as "GRI," while Graco, Inc. usually was referred to as "Graco"; that King and Frimberger submitted documents to the bank identifying Graco, Inc. as a "third party beneficiary" under the escrow agreement; and that the bank and Mahon intended to establish an escrow arrangement with Graco, Inc. The bank raised the question of whether the "Graco" in Schedule A was GRI in a submitted jury question, which the court rejected.

The escrow agreement does not controvert the admission that the bank is GRI's escrow agent. The document the bank references refers to "Graco" as the party entitled to payment, but does not contradict that the bank is GRI's escrow agent. The "Graco" in the document could, in fact, refer to GRI. Although the names on the document's Schedule A were identified in cross-examination as Graco, Inc. employees, the record does not show they were not also GRI employees or were not authorized to sign for GRI.

The Schedule A that lists as a vendor Graco of Minneapolis, not GRI of Michigan, was not approved by GRI and purportedly was prepared by the bank. The fact that GRI introduced it as a trial exhibit does not constitute waiver.

If the evidence controverts the bank's admission, it does so tangentially. In *Marshall v. Vise, supra,* the party who waived its deemed admissions did so by putting on its case in addition to relying on deemed admissions. Here, the miscellaneous suggestions are not clear enough to constitute waiver. Incidental references to "Graco" by parties associated with Graco, Inc. and GRI do not controvert the deemed admission. They may simply be casual usages by parties familiar with both entities. Also King, although a Graco, Inc. employee based in Minneapolis, was an authorized representative of GRI, so any reference to Graco in Minneapolis does not necessarily rule out a reference to GRI.

The bank argues that GRI also waived the final group of admissions by not objecting to evidence that showed Red River paid money to the bank pursuant to an assignment and not an escrow agreement. Red River may have been operating pursuant to an assignment, but that does not mean that it was not bound by the escrow agreement once it received the money.

The bank argues in its third cross-point that GRI is not entitled to judgment here because it elected to pursue an inconsistent remedy by obtaining a judgment on the same claim in Michigan.

GRI sued Mahon in Michigan in 1987 on its contract with Mahon for collection of the indebtedness represented by the two invoices it had issued to Mahon and against Genevieve Frimberger as partial guarantor of the debt. On August 22, 1988, GRI obtained judgment against Mahon for $110,250.00 and against Mahon and Genevieve Frimberger, jointly and severally, for $440,000.00, for a total of $550,250.00. GRI later brought this suit against the bank on the escrow agreement. The Michigan court has ordered that any Texas recovery be set off against the Michigan judgment.

An election of remedies is the act of choosing between two inconsistent but coexistent modes of procedure and relief allowed by law on the same set of facts. When a party chooses to exercise one of them, it abandons the right to exercise the other and is precluded from resorting to it. The bar does not apply to the assertion of distinct causes of action against different persons arising out of independent transactions with such persons. *Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas,* 491 S.W.2d 869, 871 (Tex.1973).

The Michigan suit involved the contract between the contractor and the subcontractor on their contract and a guarantor to the contract. The Texas suit involves the escrow agent and the third-party beneficiary of the escrow agreement for breach of contract and related torts in connection with the escrow agreement. The parties are different and the causes of action are different. Al-

though both contracts deal with the Red River funds, at most that means that if GRI had collected contract damages from Mahon it might have difficulty proving contract damages with the bank here. That would not affect the tort damages GRI was seeking from the bank.

The bank argues that if it is required to pay Mahon's debt, under normal circumstances it would step into GRI's shoes for the Mahon debt. But because the debt has been merged into a judgment and because of the Michigan court order, any payment the bank might make would result in a satisfaction of the Michigan judgment and would destroy the otherwise-existing subrogation right against Mahon. Even if that were true, the bank could pursue independent remedies against Mahon pursuant to its own escrow agreement.

The bank asserts in its fourth cross-point that it should be given a $419,500.00 credit on any judgment recovered by GRI because GRI had previously received that sum in satisfaction of the damages sought in this case.

Before the case was submitted to the jury, the bank moved for a dollar-for-dollar credit on any judgment that might be rendered. GRI's injuries were the failure of the bank to pay invoices under the escrow agreement. GRI obtained a Michigan judgment against Mahon and Mahon's guarantor for the same amount on the unpaid invoices. GRI also received a mortgage on property worth an appraised value of about $400,000.00 and collected $19,500.00 in satisfaction of the judgment.

■ A plaintiff may obtain only one recovery for the same injury. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). Here, the owner of the real estate was not able to deed the land to GRI in lieu of foreclosure because of preexisting encumbrances. GRI recovered only a mortgage of indefinite value. There is no evidence of a value that could be used as a credit. The bank argues that if GRI is awarded a Texas judgment and collects on that judgment, it may use those proceeds to pay off the encumbrances against the land and foreclose on the land, thus getting a double recovery. If

that occurs, the Michigan court will likely take that into account in any foreclosure proceedings to prevent a double recovery.

■ As for the $19,500.00, the record shows that GRI sued Mahon for breach of contract and conversion on the underlying contract. GRI in an interrogatory response said it had collected $19,500.00 on its Michigan judgment. Because GRI can receive only one recovery for its injury and its Michigan breach of contract suit deals with the same funds as the Texas escrow suit, Oaklawn Bank is entitled to a $19,500.00 set-off on the Texas judgment.

■ The bank also argues it is entitled to a set-off for the mortgage GRI recovered on real estate appraised at about $400,-000.00. In Texas, a levy on land is not a satisfaction of the judgment, *Cundiff v. Teague*, 46 Tex. 475, 477 (1877). The judgment debtor, notwithstanding the levy, holds the title and possession and is in the enjoyment of the land's profits. *White v. Graves*, 15 Tex. 183, 187 (1855). Title does not pass by the levy. The judgment is not satisfied until the sale. *Id.; also see* 48 TEX.JUR.3d *Judgments* § 571 (1986). Indeed, generally a judgment for the payment of money can be satisfied only in money, unless the judgment's owner accepts some other thing of value, such as a mortgage on the debtor's property, 49 C.J.S. *Judgments* § 552 (1947), and the bank presents no that evidence GRI accepted a lien in satisfaction of the debt. Moreover, although the bank refers to a Michigan judgment, it wishes to use the lien as a set-off against a Texas judgment, so the procedural law of Texas as the forum state controls. If the bank wishes to demonstrate that under Michigan law a lien satisfies a judgment, it must demonstrate that Michigan law differs from Texas law in that regard. *Mathis v. Wachovia Bank & Trust Co.*, 583 S.W.2d 800, 802 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Without such proof, we must presume that Michigan law is the same as Texas law. *Braddock v. Taylor*, 592 S.W.2d 40, 42 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.).

GRI also contends that it is entitled to prejudgment interest on its contract claim.

■ A prevailing plaintiff may recover prejudgment interest compounded daily,[6] based on a 365–day year, on damages that have accrued by the time of judgment. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985). Prejudgment interest shall accrue at the prevailing rate that exists on the date judgment is rendered according to the provision of Tex.Rev.Civ. Stat.Ann. art. 5069–1.05, § 2 (now ten percent). This applies to actions for breach of contract where the amount of damages is not ascertainable from the contract's face. *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex.1988). The damages accrue for purposes of equitable prejudgment interest in such a breach of contract case from the date of injury to the date of judgment. *CKB & Assocs. v. Moore McCormack Petroleum*, 809 S.W.2d 577, 587 (Tex.App.—Dallas 1991, writ denied). The trial court has no discretion about the decision to award prejudgment interest or the rate of prejudgment interest. *Matthews v. DeSoto*, 721 S.W.2d 286, 287 (Tex.1986).

In *International Piping Systems v. M.M. White & Assocs.*, 831 S.W.2d 444 (Tex.App.—Houston [14th Dist.] 1992, writ denied), the court found that the jurors in a breach of employment contract case could not determine the damages due from the face of the contract. The jurors would have to examine sales and determine lost commissions and expenses saved, if any, to calculate damages.

■ Here, the jurors could not determine damages from the escrow agreement's face, but had to use evidence about how much money Red River paid to Oaklawn and how much GRI invoiced the bank. Because the damages cannot be determined from the contract's face, GRI is entitled to prejudgment interest compounded daily from the time the damages accrued to the date of judgment. *Cavnar v. Quality Control Parking, Inc.*, supra.

6. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 2, Act of May 4, 1983, 68th Leg., ch. 107, § 1, 1983 Tex. Gen.Laws 518–19, *amended by* Act of May 8, 1987, 70th Leg., ch. 154, § 1, 1987 Tex.Gen. Laws 1313–14. Although Article 5069–1.05, § 2 has been amended and now requires prejudgment interest to be compounded annually, this action was filed before the amendment and so is

■ Ordinarily, when we cannot tell when the damages accrued, we remand the cause to the trial court for a determination of that question. *Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747, 749 (Tex.1988); *see Swanson v. Schlumberger Technology Corp.*, 895 S.W.2d 719, 745 (Tex.App.—Texarkana 1994, writ granted). GRI requests prejudgment interest calculated from October 15, 1986, the date Mahon gave Oaklawn authorization to release $550,000.00 to GRI. We can tell, as a matter of law, that GRI had been injured by that date. It is probable that the injury occurred before that date, perhaps when the bank paid out funds in an unauthorized fashion, but GRI does not seek prejudgment interest from the date of actual injury. It only seeks interest from October 15, 1986.

■ The bank also asks that we remand the case on the issue of prejudgment interest so it can offer evidence that GRI did not vigorously pursue its claim, thus deliberately letting interest accumulate.

The *Cavnar* prejudgment interest scheme does not create incentives for plaintiff delays. *Matthews v. DeSoto, supra.* If a plaintiff unnecessarily delays resolution of the case, the defendant has several methods to force the case to trial, such as objecting to the granting of continuances, objecting to the passing of the case, and moving for a special trial setting. *Id.* An equitable exception to *Cavnar* is not needed. *Id.* We need not remand the case for further fact finding.

GRI also asks for prejudgment interest on that portion of its attorneys fees that were paid before judgment, an amount it puts at $156,115.22.

■ Pecuniary and nonpecuniary damages subject to prejudgment interest, *Cavnar v. Quality Control Parking, Inc., supra*, do not include attorney's fees. *Fuchs v. Life-*

governed by *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929 (Tex.1988), which applied the standard of calculating interest from *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985). *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

*time Doors, Inc.,* 939 F.2d 1275, 1280 (5th Cir.1991); *cf. C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 325 (Tex.1994); *accord Hervey v. Passero,* 658 S.W.2d 148, 149 (Tex.1983).

For the reasons stated, the judgment is reversed and judgment is here rendered for GRI against the bank for $550,250.00 in contract damages, with a $19,500.00 set-off for its collection on its Michigan judgment, and $280,000.00 in attorney's fees, plus post-judgment interest from date of judgment as provided by law and prejudgment interest compounded daily from October 15, 1986 to the date of judgment, as provided by law.