6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00040-CV


______________________________





IN RE:


STEPHEN CLAY JOHNSTON








 
 

Original Mandamus Proceeding







 
 



Before Cornelius, C.J., Grant and Ross, JJ.

Opinion by Justice Ross



O P I N I O N


 Stephen Clay Johnston has filed a petition seeking a writ of mandamus. Johnston
filed a motion seeking forensic DNA testing with the trial court in which he was convicted. 
He has appeared before this Court previously in connection with this same proceeding, in
Cause Number 06-02-00017-CV. In that petition, Johnston asked this Court to order the
trial court to rule on his motion for DNA testing. 

 In our opinion, on February 20, 2002, we pointed out that Johnston had provided
this Court with no information to show when he filed the motion, whether he complied with
the requirements of the Texas Code of Criminal Procedure in seeking relief, whether the
prosecutor had responded to his motion, or the date on which it was tendered to the trial
court. We acknowledged that case authority provides mandamus will lie to require a trial
court to rule on a motion within a reasonable period of time, but held that, under the state
of the record provided, we could not determine that Johnston was entitled to a writ of
mandamus directing the court to rule.

 Three months have now elapsed. Johnston again appears before this Court by
petition for writ of mandamus and again complains the trial court has not ruled on his
motion. He has attached a file-marked copy of his motion and the State's response to this
petition. His motion was filed September 6, 2001. The State filed its response October 17,
2001.

 In its response to Johnston's petition for writ of mandamus, the State has informed
this Court that the Honorable Jim Lovett of the 6th Judicial District Court denied Johnston's
motion for DNA testing. The State acknowledges the record does not reflect when this
occurred, and we have been informed by the district clerk's office that no order has ever
been entered in this matter. The State has not responded to the petition on its merits, but
instead refers this Court to its response on the merits of the motion for DNA testing which
it filed with the trial court.

 The issue immediately before this Court is not the merits of the trial court's decision. 
The problem with which we are faced is the undisputed fact that the trial court did not
render a written order ruling on the motion. Tex. Code Crim. Proc. Ann. art. 64.05 (Vernon
Supp. 2002) specifically provides for an appeal from the trial court's finding under Tex.
Code Crim. Proc. Ann. arts. 64.03, 64.04 (Vernon Supp. 2002). Under typical
circumstances, an appeal may not be taken from an oral disposition in any context. The
rules of appellate procedure presuppose that a written order or judgment is in existence
and set up various timetables based on that written determination. The article at bar,
however, does not provide any detail about how such an appeal is to be pursued; it does
not set out a timetable for such an appeal; it does not set out when such a timetable is to
commence; it does not specify whether the defendant may appeal, or the state, or both;
and it also does not state that a written order is necessary. Further, if the trial court orders
DNA testing under Article 64.03 and an appeal is taken from that order, the statute does
not provide that the testing be stayed pending that appeal.

 In addition, Article 64.03(c) specifically states that, if a court finds in the affirmative,
it must order the testing conducted. The statute does not specifically require that an order
be made if the court does not find that testing should be conducted. However, because
the defendant has a right to appeal from a finding under the article, and since any appeal
must be from an order or judgment, it is necessarily implied that the trial court must make
a written order in either circumstance.

 An additional question is the nature of the required order. The type of order involved
is obviously not interlocutory, and we find nothing to suggest that this type of order is
accelerated in nature. Thus, we conclude that the finding on DNA testing is an appealable
order as set out by Tex. R. App. P. 25.2. As such, an appeal must be filed under Tex. R.
App. P. 26.2(a) within thirty days after the day the court enters an appealable order. 

 The next question is what "entering" an order consists of. The rule specifically
states that (unlike an appeal from the imposition of sentence), an appeal from an order is
to be made within thirty days after the date the court enters that order. The Texas Court
of Criminal Appeals addressed the meaning of the phrase "entered by the court" in State
v. Rosenbaum, 818 S.W.2d 398 (Tex. Crim. App. 1991). In Rosenbaum, the issue was
whether the state's notice of appeal was timely. The court analyzed a seeming conflict
between Article 44.01(d) of the Texas Code of Criminal Procedure, which required the
notice of appeal to be filed within fifteen days of the date the order is entered, and former
Texas Rule of Appellate Procedure 41(b)(1) (Vernon 1997), which required the state's
notice to be filed within fifteen days of the date the judge signed the appealable order, and
interpreted the phrase "entered by the court" as encompassing the signing of an order by
the trial judge. Rosenbaum, 818 S.W.2d at 402. The court concluded that the time for
filing the state's notice of appeal ran from the date the trial judge signed the appealable
order. Id. at 402-03; State v. Shaw, 4 S.W.3d 875, 877-78 (Tex. App.-Dallas 1999, no
pet.) (holding that state's appeal under Article 44.01 must be from written order signed by
trial judge); State v. Acosta, 948 S.W.2d 555, 556 (Tex. App.-Waco 1997, no pet.) (state
cannot appeal from oral suppression ruling, only from written order on that ruling). (1)

 When no written order is made, the movant's right to appeal is negated. 
Accordingly, we find that we must direct the trial court to sign a written order in this case. 
Any timetable to appeal from that order will commence on the date of its signing, as
provided by the rules of appellate procedure. (2) 

 We conclude the trial court is required to enter a written order in resolving a motion
seeking DNA testing of evidence. The petition for writ of mandamus is therefore
conditionally granted. The writ will issue only if the trial court fails to take appropriate
action in accordance with this opinion.


 Donald R. Ross

 Justice


Date Submitted: May 23, 2002

Date Decided: May 24, 2002


Publish

1. The Fort Worth Court of Appeals held the trial court's oral announcement of its
decision in open court was not final and appealable until the trial judge signed the written
order. State v. Kibler, 874 S.W.2d 330, 332 (Tex. App.-Fort Worth 1994, no pet.) (citing
Emerald Oaks Hotel/Conference Ctr., Inc. v. Zardenetta, 776 S.W.2d 577, 578 (Tex.
1989)); see State v. Poe, 900 S.W.2d 442, 444 (Tex. App.-Amarillo 1995, no pet.).

2. See Kutzner v. State, No. 74,135, 2002 Tex. Crim. App. LEXIS 81 (Tex. Crim. App.
Apr. 10, 2002).


lien, and even if that were error, any right to recover on the
judgment is now protected by the bond, and imposition of such a lien at this point would be
duplicitous and improper. Driver is not entitled to have its right to recover on the judgment
protected twice. 

The Appeal by Mustang

 Cross-Appellant Mustang raises five issues in which it contends that the trial court erred by
disregarding the jury's answer to its damage issue; that because the jury found that Driver was in
breach, the court erred by refusing to disregard the jury's answer finding that it had wrongfully
terminated Driver; and that there was legally and factually insufficient evidence to support the
finding of wrongful termination. If we find in Mustang's favor on these points, we would then reach
its further contentions that attorney's fees were improperly assessed and that the court should also
have entered judgment against Seaboard Surety. 

Judgment Notwithstanding the Verdict-Standard of Review

 We will affirm a judgment notwithstanding the verdict (j.n.o.v.) if there is no evidence to
support an issue, or conversely, if the evidence establishes an issue as a matter of law. Exxon Corp.
v. Quinen, 726 S.W.2d 17, 19 (Tex. 1987). "No evidence" exists, and a j.n.o.v. should be rendered,
when the record discloses one of the following: (1) a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or evidence from giving weight to the only evidence offered
to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of
evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. Juliette Fowler
Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 666 n.9 (Tex. 1990). To determine whether
there is any evidence, we must review the record in the light most favorable to the verdict,
considering only the evidence and inferences that support the verdict and rejecting the evidence and
inferences contrary to the verdict. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990). 
When there is more than a scintilla of competent evidence to support the jury's findings, the j.n.o.v.
should be reversed. See id. at 228. If we decide that the j.n.o.v. was erroneous, we must reverse and
render judgment in harmony with the verdict, unless the appellee has presented a cross-point
sufficient to vitiate the jury's verdict. Cain v. Pruett, 938 S.W.2d 152, 160 (Tex. App.-Dallas 1996,
no writ).

The Damages Issue

 Mustang first contends that the j.n.o.v. was improperly granted because the court erred in
deciding that there was no evidence to support the amount of the damage award. (4) Mustang then
argues that "Driver has waived this issue" because it did not object to evidence from Mustang's
witnesses. (5)
 The contention of error and this argument do not mesh. The issue of whether the
evidence presented to the jury is legally sufficient is not dependent on whether Driver timely
objected to testimony-it is dependent on whether that testimony supports the verdict. 

 The issue is whether there was some evidence of damages to support the jury's verdict. There
is substantial evidence of the amount that it cost Mustang to complete the pipeline. The jury charge
contained language limiting any recovery to "[t]he reasonable and necessary costs incurred by
Mustang Pipeline Company to complete the pipeline less the amount agreed to between Mustang . . .
and . . . Driver . . . to construct the pipeline." The position taken by Driver and accepted by the trial
court is that this evidence was legally insufficient because there was no evidence before the jury to
show that the amount that was admittedly paid was "reasonable and necessary" to complete the work. 

 Mustang directs this court to substantial evidence about the extent of damages. It does not
direct this court to any evidence from any source to suggest that the actual expenditures that it made
were reasonable or necessary-merely that those were the amounts expended in completing the
pipeline. Mustang argues correctly that it is not necessary for the witnesses to repeat the magic
words "reasonable and necessary" in order to provide evidence that expenses are in fact "reasonable
and necessary." As long as the evidence sufficiently shows that the expenses were reasonable and
necessary, it is not required that particular "magic words" be used by the witnesses. (6)

 Damages for breach of contract are the contract price, less the cost of completion. Sage
Street Assocs. v. Northdale Constr. Co., 937 S.W.2d 425, 426 (Tex. 1996). As applied in
construction cases, the general rule is that the correct measure of damages resulting from the breach
of a building contract is the reasonable cost of remedying the defects which constitute the breach. 
Dallas Ry. & Terminal Co. v. Gossett, 156 Tex. 252, 294 S.W.2d 377 (1956); Warner v. Irving
Lumber Co., 584 S.W.2d 893, 896 (Tex. Civ. App.-Dallas 1979, no writ); County of Tarrant v.
Butcher & Sweeney Constr. Co., 443 S.W.2d 302 (Tex. Civ. App.-Eastland 1969, writ ref'd n.r.e.);
Cooper Concrete Co. v. Hendricks, 386 S.W.2d 221 (Tex. Civ. App.-Dallas 1965, no writ). 
However, the fact of payment, standing alone, is no evidence that expenses were reasonable and
necessary. Ashley v. Bizzell, 694 S.W.2d 349, 354 (Tex. App.-San Antonio 1985, writ ref'd n.r.e.);
Truck Farm, Inc. v. Allen, 608 S.W.2d 296, 297 (Tex. Civ. App.-Dallas 1980, no writ). 

 Similarly, in the analogous area of repairs (rather than new construction), a party seeking
recovery for the cost of repairs must prove their reasonable value. See, e.g., Ebby Halliday Real
Estate, Inc. v. Murnan, 916 S.W.2d 585, 589 (Tex. App.-Fort Worth 1996, writ denied); GATX Tank
Erection Corp. v. Tesoro Petroleum Corp., 693 S.W.2d 617, 619 (Tex. App.-San Antonio 1985, writ
ref'd n.r.e.) (stating "[i]t is incumbent upon the parties seeking recovery for the cost of repairs to
prove the reasonable value of such repairs"). Ordinarily, to establish the right to recover costs of
repairs, it is not necessary for a claimant to use the words "reasonable" and "necessary"; a claimant
need only present sufficient evidence to justify a jury's finding that the costs were reasonable and the
repairs necessary. Fort Worth Hotel Ltd. P'ship v. Enserch Corp., 977 S.W.2d 746, 763 (Tex.
App.-Fort Worth 1998, no pet.); see Murnan, 916 S.W.2d at 589; Ron Craft Chevrolet, Inc. v. Davis,
836 S.W.2d 672, 677 (Tex. App.-El Paso 1992, writ denied). However, mere proof of amounts
charged or paid does not raise an issue of reasonableness, and such amounts ordinarily cannot be
recovered without evidence showing the charges were reasonable. Fort Worth Hotel Ltd. P'ship, 977
S.W.2d at 762-63; see Murnan, 916 S.W.2d at 589; GATX Tank Erection Corp., 693 S.W.2d at 620;
Bradley v. Castro, 591 S.W.2d 304, 306 (Tex. Civ. App.-Fort Worth 1979, no writ); Frost Nat'l
Bank of San Antonio v. Kayton, 526 S.W.2d 654, 666-67 (Tex. Civ. App.-San Antonio 1975, writ
ref'd n.r.e.); Allright, Inc. v. Lowe, 500 S.W.2d 190, 191 (Tex. Civ. App.-Houston [14th Dist.]
1973, no writ).

 These cases hold that a plaintiff cannot recover damages just by proving how much it spent. 
It must also provide evidence that the amount spent was reasonable and necessary. But see Liptak
v. Pensabene, 736 S.W.2d 953, 958 (Tex. App.-Tyler 1987, no writ) (holding that the testimonies
of three qualified expert witnesses about the damages done to a house by termites, and their opinions
as to what the repairs would cost, was some evidence that the cost of repairs was "reasonable and
necessary," although those words were not used in their testimonies) (citing English v. Fischer, 649
S.W.2d 83, 91-92 (Tex. App.-Corpus Christi 1982), rev'd on other grounds, 660 S.W.2d 521 (Tex.
1983)).

 Mustang makes no effort to direct this court to any testimony that would tend to show that
the amount paid was reasonable or necessary. (7) It did attempt to introduce such evidence by a rebuttal
witness. The trial court refused to permit the testimony-because there was nothing for it to rebut. 
Driver did not call its own expert (in fact, at the discussion about Mustang's rebuttal witness, counsel
stated that he had called his expert and told him to turn around and go home because he would not
be needed), who would have testified about the unreasonableness of the amounts paid, because
Mustang did not provide any such evidence for him to controvert. 

 The weight of authority indicates that the mere evidence of the amounts paid-without
more-is no evidence that those amounts were reasonable. The necessity of completing the pipeline
was shown by the evidence of the failure to complete the contract by Driver and the completion by
another contractor. That does not suffice to show that the cost of the work was reasonable. 
Accordingly, the trial court correctly granted a j.n.o.v. on that issue. 

 Mustang next contends that the jury's answer to question two, that Mustang was unjustified
in terminating the contract, is immaterial. Mustang argues that because the jury also found that
Driver did in fact breach the contract, it was as a matter of law entitled to terminate if any breach of
contract actually occurred. That was not the theory presented at trial. At trial, Mustang relied on the
portion of its contract that permitted it to terminate for cause. That clause contains the operative
language that was presented to the jury in the charge. 

 Mustang now attempts to apply the underlying common-law question of whether it was
legally entitled to terminate the contract because of the breach. A party may typically only terminate
a contract when the breach of contract is found to be a material breach. A party to a contract may
elect to terminate the contract and be excused from performance of any executory obligation if the
other party repudiates the contract or commits a material breach. Lazy M Ranch, Ltd. v. TXI
Operations, LP, 978 S.W.2d 678, 680-81 (Tex. App.-Austin 1998, no pet.); MJR Corp. v. B & B
Vending Co., 760 S.W.2d 4, 20-21 (Tex. App.-Dallas 1988, writ denied); Corso v. Carr, 634 S.W.2d
804, 808 (Tex. App.-Fort Worth 1982, writ ref'd n.r.e.). (8) The jury was not instructed on the concept
of "material" breach because it was not contained within the jury question submitted by Mustang. (9) 
The question merely asked if a breach occurred, without any surrounding instruction to the jury.

 Our review is controlled by the posture of this case as an appeal from a j.n.o.v. The question
is whether the trial court should have granted Mustang's motion for j.n.o.v. and disregarded the jury's
answer to the question of whether its termination was justified as immaterial. 

 A trial court may disregard a jury's finding if it is immaterial. See Spencer v. Eagle Star Ins.
Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994). A question is immaterial when it should not have
been submitted or when it has been rendered immaterial by other findings. Id.; Crescendo Inv., Inc.
v. Brice, No. 04-00-00101-CV, 2001 WL 576586, at *6 (Tex. App.-San Antonio May 30, 2001, no
pet. h.). 

 In order for Mustang to prevail on this point, we would have to conclude that any breach
would suffice to justify termination of the contract. The law does not support that position, and that
is precisely what this charge was designed to avoid. This is not a generic jury question, but is one
that is tailored to the allegations of this case and based on the terms of the contract between the
parties. It clearly asks the jury to decide whether Mustang was justified in terminating the contract
in accordance with specified contractual terms allowing such action. The jury found that it was not. 
This issue is not "immaterial," but provides the second level of determination for the fact finder. 
From its answer to that issue, the court could then apply contract law to the finding. Thus, the trial
court did not err by applying the jury's finding, because the question was not immaterial.

 Mustang further contends that because the jury found that Driver was in breach, jury
questions two and four should have been disregarded as immaterial because it was not required to
continue to perform under the terms of the contract. This again raises the question of whether
Driver's breach was material. When a party materially breaches a contract, the nonbreacher may treat
the contract as ended and cease performance. Graco Robotics, Inc. v. Oaklawn Bank, 914 S.W.2d
633, 641 (Tex. App.-Texarkana 1995, writ dism'd); Morgan v. Singley, 560 S.W.2d 746, 748 (Tex.
Civ. App.-Texarkana 1977, no writ). (10)

 As previously stated, the jury was not asked to determine whether the actions constituting
Driver's breach of contract was material, and no such question was requested by Mustang. (11) 
However, on appeal Mustang argues that the contract clearly sets out that "time is of the essence,"
and argues that this is necessarily a material breach. Based on that premise, Mustang asks this court
to find that the breach found by the jury was material, and to then further conclude that Mustang was
excused from further performance. 

 Whether a breach of contract is so material as to authorize the other party to repudiate the
contract is a question of fact to be determined by the trier of fact, and such a determination
necessarily turns on the facts of each case. (12) Briargrove Shopping Center Joint Venture v. Vilar,
Inc., 647 S.W.2d 329, 333 (Tex. App.-Houston [1st Dist.] 1982, no writ); Advance Components, Inc.
v. Goodstein, 608 S.W.2d 737, 739 (Tex. Civ. App.-Dallas 1980, writ ref'd n.r.e); Cowman v. Allen
Monuments, Inc., 500 S.W.2d 223, 226 (Tex. Civ. App.-Texarkana 1973, no writ).

 This is necessarily the situation in a case such as this because the question of whether a "time
is of the essence" clause justifies termination of the contract is not necessarily controlled entirely by
the written word. In that vein, courts have held that even where time is of the essence, a stipulated
time limit may be extended either by agreement or by waiver. Puckett v. Hoover, 146 Tex. 1, 202
S.W.2d 209 (1947); Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454 (1943); Laredo Hides Co. v.
H. & H. Meat Prods. Co., 513 S.W.2d 210 (Tex. Civ. App.-Corpus Christi 1974, writ ref'd n.r.e.). 
Such a waiver "not only may be shown by parol, but may be made to appear from the circumstances
or course of dealing." Puckett, 202 S.W.2d at 212; Smith v. Hues, 540 S.W.2d 485, 488 (Tex. Civ.
App-Houston [14th Dist.] 1976, writ ref'd n.r.e.); see Shaver v. Schuster, 815 S.W.2d 818 (Tex.
App.-Amarillo 1991, no writ).

 The jury was not asked whether the breach was material, and in the absence of a jury's
finding, the trial court was not required to treat the breach as such as a matter of law. Therefore, the
trial court did not err by overruling Mustang's motion for j.n.o.v. sought on the ground that the court
should disregard jury questions two and four.

 Mustang further contends that the evidence is legally and factually insufficient to support the
jury's answer to question two (that it was not justified in terminating the contract). 

 When deciding a no-evidence point, in determining whether there is no evidence of probative
force to support a jury's finding, we must consider all of the evidence in the record in the light most
favorable to the party in whose favor the verdict has been rendered, and we must apply every
reasonable inference that could be made from the evidence in that party's favor. Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). In this review, we disregard all evidence
and inferences to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995);
Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). A no-evidence point will be
sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c)
the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977
S.W.2d 328, 334 (Tex. 1998).

 When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must
consider and weigh all of the evidence, not just that evidence which supports the verdict. Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998). We can set aside the verdict only if it
is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and
unjust. Id.; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). The court of appeals is not a fact finder. 
Accordingly, we may not pass on the witnesses' credibility or substitute our judgment for that of the
jury, even if the evidence would clearly support a different result. Maritime, 971 S.W.2d at 407. 

 Our factual review of the evidence for sufficiency is governed by the language of the jury
question and the evidence bearing on that question. Driver provided evidence that it had sixty men
working on the job and pointed out repeatedly that Mustang had never complained that it had too few
men working. There was no indication that the workers were inadequately skilled, and there was no
evidence at all that they disregarded the instructions of the supervising engineer.

 A certificate was obtained from Fluor Daniel Williams Brothers (Fluor) (the supervising
engineering firm) that cause existed to terminate the work of Driver, but the evidence indicates that
the method of giving written notice of termination was not in accordance with the terms of the
contract-as Mustang terminated the contract and sued Driver without giving notice as required. 

 The supervising engineer stated in the certificate of default that more men and equipment
were needed. There is evidence, however, that the engineer actually had no idea how many men
were on the job, or were needed, or what type of equipment was needed. Also, the engineer had
never visited the work site or otherwise observed the operation. 

 The evidence also showed that Troy Construction, Inc. (Troy), the company building the
south section of the pipeline, was unable to complete its portion timely, although Mustang had stated
that Troy was on schedule. Further, Troy sought and obtained a thirty-day extension for adverse
weather only a few days after Mustang refused to give Driver a thirty-day extension sought for the
same reasons. 

 The foregoing constitutes some evidence to support the jury's answer to question two.

 The remaining issue is whether the evidence is factually sufficient to support the answer to
question two. In addition to the testimony set out above, Mustang points to the uncontrovertible fact
that Driver was only fifteen percent complete with sixty percent of its time gone. Mustang points
out that Driver refused to leave the wet areas and work on portions of the line that were drier-and
that the moves would have been done at Mustang's expense. However, Fluor's internal reports
characterized the weather conditions as "abysmal" and acknowledged twenty-six rainout days.

 The contract also contains language providing for the grant of additional time in the event
of lost days due to weather, and the evidence shows that the pipeline on the south portion was
delayed by at least thirty days from completion due to weather delays. (13) Further, the evidence is
conflicting as to whether Driver had accepted the seven-day-a-week fourteen-week schedule with
the understanding between the parties that it was necessarily dependent on the amount of weather
stoppages involved.

 Mustang has not shown that the jury's verdict was against the great weight of the evidence. 
We must therefore conclude that it was factually sufficient to support the jury's answer to question
two.

 In an alternative argument, Mustang also contends that a second termination provision found
in Section 3.4402 of the contract authorized termination of the contract by Mustang for mere
convenience, and for any reason, and that in light of that provision, the jury's finding that Mustang
was unjustified in terminating the contract cannot withstand a legal or factual sufficiency review. 

 This issue was not presented to the jury. Mustang directs this court to no authority that would
entitle it to obtain a verdict at this point on a ground not urged below. We have been directed to no
location in the record where it was argued to the trial court. It is the court's charge, not some other
unidentified law, that measures the sufficiency of the evidence when the opposing party fails to
object to the charge. Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000). 

 Because of our conclusions on these contentions of error, we need not address the remaining
points brought on appeal. 


 The judgment is affirmed.



 Ben Z. Grant

 Justice


Date Submitted: October 24, 2001

Date Decided: December 20, 2001


Publish
1. The contract also contains a "force majeure" clause suspending the duties of the parties if
performance was prevented by an act of God, but concluding that "[i]t is specifically agreed and
understood, however, that notwithstanding this Article or any other Article hereof, Company
[Mustang] shall have the right to immediately terminate this Contract if the Contractor is, or may be,
rendered unable to perform hereunder for any reason." Mustang did not seek to terminate the
contract under the language of this clause, but instead did so under the clause permitting termination
for cause.
2. Specifically, Mustang provided evidence in chart form that it cost


 $14,216,255 Total costs to complete the north spread

 less $10,742,765 Total Driver contract amount

 $ 3,473,490

 plus $ 642,957 Lost net profits due to delay in completion

 less $ 51,161 Agreed payment to Driver for mats, flumes, and skids

 $ 4,065,286 TOTAL CLAIM
3. Mustang pointed out in a post-submission brief that language in the damage issue of the jury
charge allowed the jury to award Driver a recovery for lost profits. Mustang did not, however, raise
a point of error regarding the jury's finding on this issue on appeal.
4. Mustang states in its brief that the trial court found evidence to support a breach of contract
but disregarded the damages because there was no evidence to support that award. The judgment
does not state that the court found evidence to support a breach of contract. The judgment does
explicitly state that the court found there was no evidence of probative force to support the damage
award and then granted the j.n.o.v.
5. Mustang's waiver argument is based in part on our opinion in Dougherty v. Gifford, 826
S.W.2d 668, 680 (Tex. App.-Texarkana 1992, no writ). In that opinion, we stated:


 Dougherty argues that there was no evidence that the past medical expenses
were necessary and reasonable, and an award including these amounts is
impermissibly speculative. See Roth v. Law, 579 S.W.2d 949, 956 (Tex. Civ.
App.-Corpus Christi 1979, writ ref'd n.r.e.). Dougherty and Molina made no
objection to the evidence of past medical expenses on this or any other ground. 
Indeed, their counsel expressly stated that he had no objection to such evidence. Any
error in this respect was waived. 


Although our phrasing of this conclusion could have been clearer, the surrounding language shows
that we first overruled a contention that evidence was improperly admitted, in part because there was
no timely objection on that basis, and then concluded that the properly admitted evidence was
sufficient to support the verdict. This case does not suggest that if a party fails to complain about
the admission of evidence, that party has waived his right to complain that the evidence admitted was
insufficient to support the verdict. 

6. A plaintiff must present sufficient evidence to justify the jury's finding that the costs of
repair or replacement were reasonable and necessary. Ron Craft Chevrolet, Inc. v. Davis, 836
S.W.2d 672, 677 (Tex. App.-El Paso 1992, writ denied). "Reasonable" and "necessary" are not
"magic words" that a witness must incant. Merchants Fast Motor Lines, Inc. v. State, 917 S.W.2d
518, 523 (Tex. App.-Waco 1996, writ denied); Ron Craft Chevrolet, Inc., 836 S.W.2d at 677;
Carrow v. Bayliner Marine Corp., 781 S.W.2d 691, 694 (Tex. App.-Austin 1989, no writ). 

7. A representative of Sunland Construction, James Daigler, the company that completed the
pipeline, testified that its original bid for the entire job was less than the amount Sunland charged
to complete the job. He further testified that Sunland believed its original bid was reasonable.
8. Mustang argues that the material breach requirement is limited to situations in which a party
seeks specific performance. Although several of the cases cited do involve that type of situation,
they do not limit the application of that concept to that context. See generally Cowman v. Allen
Monuments, Inc., 500 S.W.2d 223 (Tex. Civ. App.-Texarkana 1973, no writ).
9. The jury question reads as follows:


 Was Mustang Pipeline Company justified or not justified in terminating
Driver Pipeline Company?


 The contract provided that if Driver Pipeline Company


 (1) persistently or repeatedly refused to supply enough properly
skilled workmen or materials or


 (2) failed to supply enough properly skilled workmen or
materials, or 


 (3) disregarded the instructions of the engineer.


 then Mustang Pipeline Company,


 (1) upon the certificate of Fluor Daniel William Brothers that
sufficient cause existed to terminate the work of Driver
Pipeline Company, and


 (2) after giving written notice to Driver Pipeline Company and
Seaboard Surety Company


 could terminate Driver Pipeline Company without prejudice to any other right
or remedy to Mustang Pipeline Company.


 Answer "Justified" or "Not Justified."


 Answer: Not Justified 
10. The nonbreacher may then sue for the benefit of the bargain. Graco Robotics, Inc. v.
Oaklawn Bank, 914 S.W.2d 633, 641 (Tex. App.-Texarkana 1995, writ dism'd); El Paso & S.W.R.
Co. v. Eichel & Weikel, 130 S.W. 922, 940 (Tex. Civ. App. 1910, writ ref'd). When a party to the
contract fails to perform his obligation, he may not thereafter enforce the remaining terms of the
contract. Atl. Richfield Co. v. Long Trusts, 860 S.W.2d 439, 447 (Tex. App.-Texarkana 1993, writ
denied). 
11. A question on material breach is an inferential rebuttal issue and thus not proper except
when properly submitted as an instruction. Weitzul Constr., Inc. v. Outdoor Environs, 849 S.W.2d
359, 365 (Tex. App.-Dallas 1993, writ denied). 
12. Mustang cites D.E.W., Inc. v. Depco Forms, Inc., 827 S.W.2d 379, 382 (Tex. App.-San
Antonio 1992, no writ), for the proposition that Driver is precluded from recovering on its claim for
wrongful termination due to its own breach of the preceding dependent obligation of timely
performance. However, in that case there was a finding by the jury that Depco Forms had materially
breached the contract.
13. There is also evidence that the final completion of the pipeline was delayed several months
beyond that time, although it became capable of use at the earlier time.