In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00185-CV
______________________________


THE LONG TRUSTS, Appellant
 
V.
 
ROBERT M. GRIFFIN, ROBERT M. GRIFFIN, JR.,
MARVIN AND MARIE OGILVIE, AND
CHARLES W. CONRAD, Appellees


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 97-1009-B


                                                 



Before Morriss, C.J., Carter, and Cornelius,* JJ.
Opinion by Justice Cornelius
*William J. Cornelius, C.J., Retired, Sitting by Assignment


O P I N I O N

          The Long Trusts appeal from a judgment rendered by the trial court after a bench
trial in a suit brought by Robert M. Griffin, Robert M. Griffin, Jr., Charles W. Conrad, and
Marvin and Marie Ogilvie for specific performance, breach of contract, and declaratory
judgment. For convenience, the Long Trusts will be referred to in this opinion as "the
Trusts," and Robert Griffin, Robert Griffin, Jr., Charles Conrad, and the Ogilvies will be
referred to collectively as "the Griffins."
          Beginning in 1978, the Griffins and some of their predecessors in interest entered
into various letter agreements with the Trusts whereby they participated with the Trusts in
drilling certain gas wells on leases situated in several counties in East Texas. The letter
agreements provided that the investors would pay certain proportions of the costs of
drilling, completing, and operating the wells, and if the wells were producers, the Trusts
would assign or credit to the investors a specified undivided interest in the working interest
the Trusts had in the wells. Most of the wells were producers, and for many years, the
Trusts operated the wells under the terms of their standard joint operating agreement that
was referred to in the letter agreements. Eventually, various disputes arose between the
Griffins and the Trusts as to whether and when the investors would receive assignments
of their interests, the billing practices between the parties, the provisions of the
assignments, and whether and on what terms the Griffins would share in an
$11,000,000.00 settlement of a "take or pay" lawsuit the Trusts had filed against Tejas Gas
Company, which was purchasing the gas produced from the wells in question.
          Ultimately, the Griffins filed suit against the Trusts. After a bench trial, the trial court
rendered judgment declaring that the letter agreements were valid; the Griffins were
entitled to assignments of their interests; ordering the Trusts to assign the Griffins their
interests; and ordering that the assignments conform to the terms of the letter agreements. 
The trial court ordered specific performance of the letter agreements, confirmed the
Griffins' share of the Tejas settlement, and adjudicated several other disputes between the
parties that will be addressed later in this opinion.
          The Trusts have appealed, and the Griffins have filed a cross-appeal complaining
of certain portions of the trial court's judgment.
          The Trusts raise numerous issues, which we group and summarize as follows: 
(1) the Griffins' suit was in reality or should have been one for trespass to try title, and they
failed to sustain such an action; (2) the Griffins' actions are all barred by limitations; (3) the
trial court erred in declaring the letter agreements valid because their enforcement is
barred by the statute of frauds; (4) the trial court erred in reforming the assignments
because there are no pleadings to support reformation and no evidence of any mistake or
fraud; (5) judgment for specific performance is improper because the Trusts elected to
credit the Griffins with their interests rather than assign them; (6) the trial court erred in
awarding the Griffins part of the Tejas settlement because the Griffins failed to timely and
properly pay their share of the litigation expenses; (7) there is legally and factually
insufficient evidence to support the trial court's award of damages; (8) it was error to award
attorneys' fees to the Griffins because there is no evidence they made a sufficient demand
for payment and there is insufficient evidence of a proper allocation of such fees among
the various claims; and (9) the trial court erred in requiring the Trusts to continue to market
the Griffins' share of the production because there is no duty for the Trust to do so.
          The Griffins' contentions are: (1) the trial court erred in limiting the assignments of
the Griffins' interests to the "well bore" of the wells involved; (2) the trial court erred in
failing to find that the Trusts breached their fiduciary duty; (3) it was error to allocate the
Griffins' share of the Tejas settlement on the basis of the expenses paid instead of on the
basis of the production and expenses attributable to the contracts; and (4) the trial court
erred in failing to find that the Griffins properly and timely elected to participate in the
Barksdale wells 5, 6, and 7 and the Beck well 6.
THE TRUSTS' ISSUES
          The trial court properly found the letter agreements valid and awarded judgment for
specific performance. The evidence and the trial court's findings of fact show that the
Griffins performed their obligations under the letter agreements. The Trusts performed
some of their obligations, but did not properly assign the working interests to the Griffins. 
Thus, a decree of specific performance was authorized. Although the trial court's judgment
in some instances attributes its decretal portions to the wrong legal theories, we must
uphold the judgment on any legal theory supported by the evidence, even if the trial court
gave an incorrect reason for its judgment. Guar. County Mut. Ins. Co. v. Reyna, 709
S.W.2d 647 (Tex. 1986); Russ v. Titus Hosp. Dist., 128 S.W.3d 332 (Tex.
App.—Texarkana 2004, pet. filed).
          The Trusts contend that the Griffins should have sued in trespass to try title, and
their failure to do so is fatal to their case. We disagree. The letter agreements the Griffins
sought to enforce were written agreements to assign interests in oil and gas leases. 
Interests in oil and gas in Texas are real property. So, in effect, the letter agreements were
contracts for the sale of interests in real property. Such contracts may be enforced by
specific performance, and it is not necessary to sue in trespass to try title to recover the
property. Kluck v. Leuschner, 70 S.W.2d 768, 769 (Tex. Civ. App.—Waco 1934, writ ref'd);
Blair v. Bird, 20 S.W.2d 843 (Tex. Civ. App.—Waco 1929, no writ); Ballard v. Ellerd, 199
S.W. 305 (Tex. Civ. App.—San Antonio 1917, writ ref'd).
          Specific performance will be granted where it appears, in view of all the
circumstances, that it will serve the ends of justice. 67 Tex. Jur. 3d Specific Performance
§ 1 (2003). Reformation and specific performance may be obtained in the same action,
i.e., the contract may be reformed or corrected, and specifically enforced as reformed. 
Tyrrell-Combest Realty Co. v. Mullen, 268 S.W. 1011 (Tex. Civ. App.—Beaumont 1925,
no writ). Specific performance is available only when the plaintiff's remedy at law is
inadequate, but it is available to enforce a contract to convey real estate because an action
for damages is inadequate in such a case. Milliken v. Townsend, 16 S.W.2d 259 (Tex.
Comm'n App. 1929).
          The Trusts also contend the letter agreements are invalid because they do not
comply with the statute of frauds. Tex. Bus. & Com. Code Ann. § 26.01 (Vernon 2002). 
They argue that the letter agreements do not adequately describe the interests to which
they pertain. To avoid violating the statute of frauds, an agreement for the sale of land
must furnish within itself, or by reference to other existing writings, records, or data,
information by which the land to be conveyed may be identified with reasonable certainty. 
MTrust Corp. v. LJH Corp., 837 S.W.2d 250 (Tex. App.—Fort Worth 1992, writ denied). 
The trial court found that the letter agreements here satisfied that requirement, and the
court's finding is supported by sufficient evidence. Aside from that finding, however, there
is another basis, also supported by sufficient evidence and the trial court's findings, on
which the letter agreements may be held valid despite the statute of frauds.
          A defense of the statute of frauds is unavailable when the party seeking to rely on
the defense recognizes the challenged agreements, acts under their provisions, accepts
benefits under them, and even performs under them over a long period of time without
complaint or action claiming they are invalid. 626 Joint Venture v. Spinks, 873 S.W.2d 73
(Tex. App.—Austin 1993, no writ); Estate of Kaiser v. Gifford, 692 S.W.2d 525 (Tex.
App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); Le Sage v. Dunaway, 195 S.W.2d 729
(Tex. Civ. App.—Waco 1946, no writ); Callahan v. Walsh, 49 S.W.2d 945 (Tex. Civ.
App.—San Antonio 1932, writ ref'd).
          In this case, both the Trusts and the Griffins acted in full recognition and acceptance
of the validity of the letter agreements for more than twenty years, accepting the benefits
and obligations of those agreements and performing their respective obligations. Indeed,
the Trusts even made assignments of the interests covered by the agreements and had
them recorded in the year 2000. Because the Griffins challenged the assignments as not
being in full compliance with the letter agreements, this suit resulted and later was
expanded to include additional controversies concerning the parties' compliance with the
agreements and other matters. Because both parties recognized their obligations under
the letter agreements and acted under their provisions until the development of the legal
action, the Trusts, and indeed the Griffins as well, are estopped to assert any invalidity of
the letter agreements by reason of the statute of frauds.
          The same theory applies to the Trusts' contention that all of the Griffins' causes of
action are barred by limitations. By recognizing the validity of the letter agreements for
over twenty years, acting under their terms, accepting the benefits under them, and
disputing with the Griffins only as to what kind of performance would comply with the
agreements until about the very time suit was filed, the Trusts are estopped to claim that
limitations have barred the actions. State v. Tex. Elec. Serv. Co., 488 S.W.2d 878 (Tex.
Civ. App.—Fort Worth 1972, no writ); Lanpar Co. v. Stanfield, 474 S.W.2d 753 (Tex. Civ.
App.—Waco 1971, writ ref'd n.r.e.); Moutos v. San Saba County Peanut Growers Ass'n,
268 S.W.2d 761 (Tex. Civ. App.—Austin 1954, no writ); see also Irwin v. Prestressed
Structures, Inc., 442 S.W.2d 406 (Tex. Civ. App.—Amarillo 1969, writ ref'd n.r.e.) (holding,
after trial, that estoppel was not proved); Rauch v. Hearne, 189 S.W.2d 342 (Tex. Civ.
App.—Waco 1945, writ ref'd w.o.m.). Additionally, the trial court found that the Griffins
instituted suit for specific performance within four years from the time the Trusts breached
the letter agreements by failing to properly assign the interests. Tex. Civ. Prac. & Rem.
Code Ann. § 16.004(a)(1) (Vernon 2002). Thus, limitations would not bar the action in any
event.
          The Trusts contend the trial court erred in "reforming" the assignments of the
working interests to comply with the provisions of the letter agreements. The Trusts made
and recorded assignments, but the Griffins contended the assignments were not in
compliance with the terms of the letter agreements. The trial court ordered the
assignments "reformed" to comply with the letter agreements.
          The Trusts argue that reformation of the assignments was not proper because there
are no pleadings to support it, there is no evidence there was a mistake in the kind of
assignments required, and there is insufficient evidence to support reformation. Putting
this case in its proper context, we note that the trial court did not apply the traditional
equitable doctrine of reformation to correct a mistake. Although the court did find there
was a mutual mistake in making the assignments, what it actually did was to specifically
enforce the letter agreements' requirements for assignments, and order that the
assignments be "reformed" to conform to those requirements. The trial court's actions in
this regard were proper, and the judgment for specific performance is not impugned or
invalidated simply because the trial court referred to the action as reforming the
assignments.
          Moreover, as we have already noted, reformation and specific performance may be
obtained in the same action. The agreement may be reformed and corrected, as well as
specifically enforced, in the same suit. Tyrrell-Combest Realty Co., 268 S.W. 1011; see
also Ballard, 199 S.W. 305.
          The Trusts assert that, because some of the letter agreements provide that when
an investor in a well complies with the provisions of the letter agreement the Trusts will
"assign or credit" the interest to the investor, the Trusts have no obligation to assign the
interest, but may instead elect to simply credit the investor with such interest. We reject
this argument. The letter agreements provide that the participants "shall own and they [the
Trusts] will assign or credit" to them their undivided interests in the working interest if and
when the well is completed as a producer. Considering the fact that the letter agreements
speak in terms of the participants owning their interests, and considering the four corners
of the letter agreements, we construe them as giving the participants the right to elect
whether to take an assignment or to allow the Trusts to simply credit them with their
interests. A simple credit of their interests would not give the participants the means to
have their "ownership" reflected in the deed records. The trial court came to the same
conclusion, since it found that the participants were entitled to assignments of their
interests upon completion of each well.
          The Trusts also contend the trial court erred in awarding Robert Griffin and Robert
Griffin, Jr., a proportionate part of the proceeds from the Tejas settlement, because they
did not properly and timely pay their share of the litigation expenses as required by the
participation agreement.
          The Trusts and the Griffins executed letter agreements in May of 1992, providing
that if the Griffins paid their pro rata share of the legal expenses in the Tejas litigation, they
would be entitled to share in the proceeds received as a result of that litigation. The
agreements provided that the Trusts would bill the investors monthly for their shares of the
legal expenses, and that the investors would be required to pay the Trusts their share of
those expenses within thirty days from receiving an invoice for them. The agreements also
provided that if the investors failed more than once to pay the invoices within thirty days
of receiving them, they would forfeit their right to share in the litigation proceeds.
          On April 1, 1997, the Trusts made their first billing to Robert Griffin and Robert
Griffin, Jr., for their share of the litigation expenses for the preceding twenty months. 
Robert Griffin was billed for $3,320.51 and Robert Griffin, Jr., was billed for $4,980.74. 
They did not pay these invoices, but instead had their attorney write to the Trusts on
April 14, 1997. They complained about the Trusts' action in waiting so long and
accumulating such large sums before billing for them, and they offered to discharge these
amounts by paying $100.00 per month for forty-one months. The Trusts did not accept this
offer. On April 30, 1997, Robert Griffin and Robert Griffin, Jr., received other billings from
the Trusts for $177.31 and $265.97, respectively. They failed to pay these amounts. The
Trusts included with their invoices a letter insisting that they make prompt payment of the
invoices while the Trusts addressed their "concerns" about the late, aggregated billings. 
On July 28, 1997, the Trusts notified Robert Griffin and Robert Griffin, Jr., that they would
no longer be participants in the Tejas settlement.
          Robert Griffin and Robert Griffin, Jr., concede they did not pay the two sets of
invoices within thirty days of receiving them. Likewise, the Trusts concede they did not bill
them on a monthly basis, but waited over twenty months to invoice them at all, and that the
invoices then were for expenses aggregated for all those twenty months. The trial court
found that, in failing to bill Robert Griffin and Robert Griffin, Jr., monthly, the Trusts
committed a material breach of their letter agreement, and that such breach excused the
failure to pay the aggregated invoices within thirty days of receiving them. We believe the
trial court was correct in this finding, and that its action is supported by the evidence. Thus,
the judgment declaring that Robert Griffin and Robert Griffin, Jr., are entitled to participate
in the Tejas settlement is correct.
          The Trusts take the position that Robert Griffin and Robert Griffin, Jr., were not
excused from their obligation to pay within thirty days, because time was not of the
essence of the obligation to bill monthly, and further because they waived the Trusts'
breach and continued to consider the contract as not breached but still in effect. See
Hanks v. GAB Bus. Servs., Inc., 644 S.W.2d 707, 708 (Tex. 1982). We disagree. 
Litigation was already in progress between the Griffins and the Trusts when it became
clear to Robert Griffin and Robert Griffin, Jr., that the Trusts were going to bill them on an
aggregated basis and not on a monthly basis, and when that became apparent, they
amended their pleadings to complain of the Trusts' breach, and to seek damages for
breach of the agreement. It should be recognized also that the Trusts' primary breach was
not their delay in billing, but their billing on an accumulated basis for long due expenses
instead of billing the expenses on a monthly basis for current expenses. Such a breach
was damaging to Robert Griffin and Robert Griffin, Jr., because it required that they make
a much larger payment at one time than would have been required of them had the
relatively small monthly expenses been billed on a monthly basis as the Trusts had agreed. 
We find no evidence that Robert Griffin and Robert Griffin, Jr., waived the Trusts' breach.
          The Trusts also contend the trial court erred in awarding damages to Robert Griffin
and Robert Griffin, Jr., for their exclusion from the Tejas settlement because there is
factually and legally insufficient evidence to support the calculation of the damages. The
letter that outlined the agreement to allow the investors to participate in the settlement
provided that the investors who participated in any lump sum settlement would share in the
settlement proceeds on "a pro rata basis according to the proportion of the total damages
attributable to that [the particular investor's] contract." 
          The Trusts later decided that the original formula for allocating damages on a per
contract pro rata basis was too difficult to prove and apply, so they sent letters to the
investors proposing an "accord and satisfaction" on the basis that each investor who
participated in the Tejas litigation would receive his share of any settlement on a different
basis. That proposal provided:
First, all unpaid attorneys' fees and expenses arising from the litigation
will be paid from the settlement proceeds. This includes a contingent fee to
Susman Godfrey. Second, all participants will be reimbursed what they have
paid for in attorneys' fees and expenses. Third, the remaining settlement
funds will be distributed based on the same fractional interests as expenses
were allocated to and paid by all participants in the settlement. That is, you
will receive a distribution of the remaining settlement funds based on the
same fractional interest which you were charged fees and expenses of the
litigation.

          Because Robert Griffin and Robert Griffin, Jr., had been excluded from the group
of participants in the Tejas litigation before the accord and satisfaction letter was executed,
they were not parties to it. The trial court found that it was impossible to determine the
amount of damages that should be awarded to them pursuant to their original contract, so
the court decreed that the damages to all participants should be the formula outlined in the
accord and satisfaction proposal. Both Robert Griffin and Robert Griffin, Jr., and the Trusts
complain of this ruling by the trial court. Robert Griffin and Robert Griffin, Jr., contend the
court should, even if a remand is required, determine and award to them their damages
based on the formula in their original participation agreement for the Tejas settlement (but
which was later revoked by the Trusts for failure to timely and properly pay their share of
the litigation expenses). The Trusts contend the court should have denied any damages
to the two Griffins because they failed to adequately prove them.
          The trial court did not abuse its discretion in finding and awarding Robert Griffin's
and Robert Griffin, Jr.'s, damages. The Trusts cannot complain of the court's use of the
formula outlined in the Trusts' own accord and satisfaction letter. It was the formula the
Trusts agreed to use for all its participants, and it is fair that the Trusts honor that formula
for its other participants, whom the trial court and this Court have found were entitled to be
participants in the Tejas settlement, although the Trusts excluded them. At the very least,
the Trusts are estopped to deny that the formula they proposed for the other investors
should also apply to Robert Griffin and Robert Griffin, Jr.
          Robert Griffin and Robert Griffin, Jr., also are in no position to complain of the trial
court's use of the revised formula. They failed to conclusively prove with reasonable
certainty what their damages would have been under the original formula, so they have
not shown that the court abused its discretion in using the revised formula.
          The Trusts contend that, because Robert Griffin and Robert Griffin, Jr., failed to
prove their damages, the trial court should have rendered a take-nothing judgment against
them on the issue of damages. See Vista Chevrolet, Inc. v. Lewis, 709 S.W.2d 176 (Tex.
1986). This rule is inapplicable here. It applies when one claiming damages produces no
evidence on which the court can calculate reasonable damages. Here, both sides
presented conflicting but inconclusive evidence on the proper measure of damages. This
authorized the trial court to choose which evidence to accept. We find there is legally and
factually sufficient evidence to support the trial court's findings and award of damages.
          The Trusts next complain that the trial court's award of attorneys' fees is improper
because (1) there is no evidence that the Griffins made proper demand on their claim
under Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (Vernon 1997), and (2) the Griffins failed
to properly segregate the attorneys' fees applicable to the Tejas settlement participation
and the other claims.
          The trial court found that the Griffins made adequate presentment of their claims to
comply with the requirements of Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2). There is
sufficient evidence to support the court's finding. No particular form of demand is required,
and the statute is to be liberally construed to promote its purpose. Jones v. Kelley, 614
S.W.2d 95 (Tex. 1981). Its purpose is to give an opportunity to the one against whom a
claim is asserted to satisfy the claim within thirty days after having notice of the claim
without incurring an obligation to pay attorneys' fees. Id.; Adams v. Petrade Int'l, Inc., 754
S.W.2d 696, 719 (Tex. App.—Houston [14th Dist.] 1988, writ denied).
          In this case, there is a long history of correspondence and negotiations between the
Griffins and the Trusts in which the Griffins made it clear that the Trusts owed them various
obligations under the letter agreements and other documents. These negotiations and
demands were made long before suit was filed to enforce them. This constitutes sufficient
presentment under the statute.
          Additionally, one of the Griffins' causes of action here was for declaratory judgment,
and the trial court rendered judgment declaring some of the rights and obligations of both
the Griffins and the Trusts. The court may award reasonable and necessary attorneys'
fees in declaratory judgment actions, and no presentment such as is required in Tex. Civ.
Prac. & Rem. Code Ann. § 38.002(2) is necessary. Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 1997).
          As concerns segregation of the fees among the various claims, the trial court
accepted the affidavit of the Griffins' attorney as to a proper segregation. There is no
controverting evidence. We find the court did not abuse its discretion in accepting this
evidence of a proper segregation.
          The Trusts also assert error on the part of the trial court in ordering them to continue
to market the Griffins' share of the production from the wells drilled and completed as
producers under the letter agreements. Both the Griffins and the Trusts concede that the
joint operating agreement under which the Trusts operated the wells gave the Trusts the
right to market the investors' share of the production, but also gave the Trusts the right to
discontinue or terminate that right at any time on giving thirty days' notice. The
assignments the Trusts voluntarily made and recorded for the Griffins in the year 2000
provided that the Trusts elected to terminate their right to market the Griffins' share of the
production. The trial court concluded that, although the Trusts had the right to terminate
the arrangement at any time, they had engaged in a course of action for over twenty years
when they did market the investors' shares of the production, and because of that course
of action, the Trusts were estopped to discontinue that practice. The trial court therefore
ordered the Trusts to continue to "market Plaintiffs' share of the gas on the same terms
and conditions as has been done for the other working interest owners." The court
specified no particular duration for this obligation.
          We find that the court erred in making this order. The Trusts had a contractual right
to terminate their right to market the investors' share of the production at any time. There
is no evidence that the Trusts are estopped from availing themselves of this contractual
right.
          Equitable estoppel requires a representation or course of dealing by one party that
causes another party to reasonably believe that the first party will not enforce a right that
he has, and reliance by the second party on that representation or course of action to his
detriment. Red Jacket Mfg. Co. v. Adams, 346 S.W.2d 897 (Tex. Civ. App.—El Paso
1961, writ ref'd n.r.e.); see also Liberty State Bank v. Guardian Sav. & Loan Ass'n, 127
Tex. 311, 94 S.W.2d 133 (1936). There is no evidence that the Trusts did anything to
induce the Griffins to believe the Trusts would not at some time avail themselves of their
right to terminate the purchasing arrangement. All the Trusts did was to market the
Griffins' share of the production, which they had a right to do as long as they chose. Their
action in doing so was consistent with the contract's provisions. The fact that the Trusts
did what the contract allowed them to do, even for twenty years, is no ground to estop them
from ceasing that practice, which the contract also gave them the absolute right to do. 
Furthermore, there was no detrimental reliance or change of position by the Griffins based
on the Trusts' course of action. We will reform the judgment to delete any requirement that
the Trusts continue to market the Griffins' share of the production.
THE GRIFFINS' CONTENTIONS
          The Griffins challenge the trial court's judgment in several respects. They first say
the court erred in ordering the Trusts to assign them their interests in the wells limited to
"the well bore and drilling unit" of the wells. The letter agreements by which the Griffins
participated in the wells provide that the Trusts will assign to the Griffins their proportionate
undivided working interest in the initial unit around the well and assignments of like
interests in the "units formed around additional wells in which you participate in drilling and
completing . . . ."
          The Griffins apparently contend the trial court should have ordered the Trusts to
assign their interests in the leases as to any drilling or pooled units around the producing
wells. We disagree with this contention. We construe the letter agreements to require an
assignment of the appropriate working interest in the drilling unit only, around each
producing well. This is how the trial court construed the agreements, but in its judgment
the court further limited the assigned interest to the well bore of the completed well. We
find this to be a restriction not authorized by the letter agreements. We will reform the
judgment to provide that the assigned interests will only be limited to the drilling unit around
the well.
          The Griffins next assert that the trial court erred in failing to find that the Trusts
breached their fiduciary duty. The court found that the Trusts acted as agent for the
Griffins in marketing their share of the production. An agency generally creates a fiduciary
relationship between the principal and the agent, but only with respect to the specific power
granted to the agent. Plummer v. Estate of Plummer, 51 S.W.3d 840 (Tex.
App.—Texarkana 2001, pet. denied); Restatement (Second) of Agency § 13 (1958). 
There is no evidence here that the Trusts breached any duty to the Griffins relating to their
marketing of the production. The trial court found there was no breach of any fiduciary
duty, and we conclude that the trial court did not abuse its discretion in making this finding. 
The finding is not against the conclusive evidence or against the great weight and
preponderance of the evidence, as it must be to authorize us to overturn the trial court's
failure to find.
          The Griffins also contend the trial court erred in finding they did not timely and
properly accept the Trusts' offer to allow them to participate in the additional wells known
as the Barksdale wells 5, 6, and 7, and the Beck well 6.
          In December 1997, the Trusts notified the Griffins of plans to drill the Barksdale and
Beck wells and offered to let them participate in those wells. In order to participate in the
wells, the Griffins had to agree to pay a total of $10,685.20. By letter, the Griffins' attorney,
Rex Nichols, notified the Trusts that the Griffins elected to participate in the four new wells,
and enclosed a check drawn on the attorney's trust account in the amount of $10,685.20. 
The Trusts notified Mr. Nichols through their own attorney that they would not accept
Mr. Nichols' check. Mr. Nichols tendered another check, but it was also refused.
          The Griffins argue that, because they timely tendered the proper amount of the
expenses, the Trusts were obligated to allow them to participate in the new wells. The
Trusts respond that the Griffins did not accept their offer, but made a counteroffer, so they
did not properly respond, and no binding contract was formed.
          The Trusts' offer contained a check list for the Griffins to fill out, sign, and return to
the Trusts if they elected to participate in the wells. The Griffins did not do that, but instead
they had their attorney write the Trusts a letter and enclose a check for the amount of the
costs. Evidence before the trial court showed that the Griffins' response was not an
unequivocal acceptance, but a counteroffer agreeing to participate in the wells if the Trusts
would accept their participation on a "non promoted" basis rather than on a "promoted"
basis as the original offer proposed. The trial court found this evidence to be the facts. 
Thus, it concluded that the Griffins' counteroffer was not an acceptance, and there was no
valid agreement to participate. We agree with the trial court's conclusion based on this
evidence. An acceptance must be identical to the offer, or there is no binding contract. 
Harris v. Balderas, 27 S.W.3d 71, 77 (Tex. App.—San Antonio 2000, pet. denied); Gilbert
v. Pettiette, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ).
          Last, Robert Griffin and Robert Griffin, Jr., complain that the trial court erred in
allocating their damages with regard to the Tejas settlement on the basis of expenses paid
instead of on the basis of what production and expenses were attributable to the contracts
in which they participated. This issue is covered in our discussion of the allocation of
damages under the Trusts' issue, and we need not repeat that discussion here.
          For all of the foregoing reasons, we modify the judgment to (1) delete the provision
of the judgment ordering the Trusts to continue marketing the Griffins' share of the
production from the wells in which they participate, and (2) provide that the assignments
from the Trusts to the Griffins assign them their interests in the leasehold area comprising
the drilling unit around the producing wells, and (3) eliminate the provision that the interests
assigned be limited to the well bore of the applicable wells. As modified, the judgment is
affirmed.
 
                                                                           William J. Cornelius*
                                                                           Justice

*Chief Justice, Retired, Sitting by Assignment

Date Submitted:      May 12, 2004
Date Decided:         July 7, 2004


ON MOTIONS FOR REHEARING

          All parties have filed motions for rehearing. We will address only the matters we
believe need further discussion.
          The Griffins argue in their motion that, with regard to the Tejas settlement proceeds,
the trial court found the damages attributable to the Rusk County contract to be certain. 
Based on that assumption, the Griffins contend the trial court's finding that such damages
were indeterminable is erroneous. We disagree. The trial court did not find that the
damages attributable to the Rusk County contract were certain; rather, in its finding number
27P, the trial court found that, in the Tejas lawsuit, the Trusts' expert, Richard A. Johnston,
attributed 84.61 percent of the damages to the Rusk County contract. The trial court,
however, was not required to accept the expert's opinion if it did not believe it was accurate
or sufficiently definite or based on reliable evidence.
          The Trusts, in their motion for rehearing, argue that we erred in upholding the trial
court's ruling that the Trusts committed a material breach of the Tejas litigation participation
letter agreement by failing to bill Robert Griffin and Robert Griffin, Jr., on a monthly basis
for their shares of the litigation expenses. The Trusts contend the agreement to bill on a
monthly basis is an independent covenant in the agreement, and therefore its breach could
not be material. Whether a covenant in a contract is dependent or independent depends
on the intention of the parties as determined from a consideration of the entire contract. 
Lazy M Ranch, Ltd. v. TXI Operations, LP, 978 S.W.2d 678 (Tex. App.—Austin 1998, pet.
denied); Graco Robotics, Inc. v. Oaklawn Bank, 914 S.W.2d 633 (Tex. App.—Texarkana
1995, writ dism'd).
          Mutual covenants will be considered dependent rather than independent unless the
contrary intention clearly appears. Graco Robotics v. Oaklawn Bank, 914 S.W.2d 633. In
this case, the main purpose of the letter agreement was to provide for the sharing of
litigation expenses. The contemplated expenses were estimated to be very substantial and
to extend over a long period of time. Robert Griffin's and Robert Griffin, Jr.'s, primary
obligation under the agreement was to pay their shares of these expenses. Thus, the
spacing and the amounts of the payments were obviously major concerns with respect to
their obligations, as well as the Trusts' rights. The trial court found that the obligation to
bill these expenses on a monthly basis was a material covenant of the contract, and we
find the court's ruling supported by the evidence and the law.
          The principal case relied on by the Trusts on this issue, Emmord's Inc. v. Obermiller,
526 S.W.2d 562 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.), is inapposite. In
that case, the disputed covenant was not even expressed in the contract. It was alleged
to be an implied covenant, but the court found that it was not established. In our case, the
obligation to bill Robert Griffin and Robert Griffin, Jr., on a monthly basis is an express
provision of the contract, and the trial court found it was a material element of the contract.
 

          We respectfully overrule the motions for rehearing.
 
                                                                           William J. Cornelius
                                                                           Justice

Date:  August 18, 2004



-align: justify; margin-left: 0.5in; margin-right: 0.5in">THE COURT.I don't think for a girlfriend to think her
boyfriend was stepping out on her is something that is impeachable.
 
. . . .
 
[DEFENSE].. . . [I]t would go to bias or prejudice.
 
THE COURT.I see your point. I will not allow it.
 
. . . .
 
THE COURT.Do you want to make a further record on
it?
 
[DEFENSE].Well, no. You're telling me that I can't go into
that?
 
THE COURT.I'm telling you it's not relevant.

          a.       Complaint Preserved for Review
          From this exchange, we see that Mumphrey offered the excluded evidence to
undermine Reedy's credibility and/or to reveal Reedy's bias or prejudice. Such a purpose
renders this excluded evidence safely in the second scenario for which Mumphrey need
only have established the general subject matter which he desired to pursue during his
cross-examination. He indicates that the excluded evidence dealt with the theory Reedy
had only imagined Mumphrey's involvement with this unnamed female. The above
exchange clearly established the general subject matter Mumphrey intended to pursue on
cross-examination and, therefore, we conclude that Mumphrey's complaint of the trial
court's exclusion of this evidence is properly before us.
          b.       No Error In Exclusion of Evidence
          Generally, and within reason, the trial court should always allow the accused great
latitude to show any relevant fact that might tend to affect the witness' credibility. See
Virts, 739 S.W.2d at 29; Koehler, 679 S.W.2d at 9. Specifically, cross-examination of a
testifying state's witness to show that the witness has suffered a recent mental illness or
disturbance is proper, provided such mental illness or disturbance is such that it might tend
to reflect on the witness' credibility. Virts, 739 S.W.2d at 30. However, the trial court
retains wide latitude to impose reasonable limits on cross-examination based on concerns
about, among other things, harassment, prejudice, confusion of issues, and the witness'
safety. Id. at 28. Additionally, even when the trial court gives the wrong reason for its
decision, we are bound to sustain the trial court's decision if it is correct on any theory of
law applicable to the case. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).
          Although Virts holds that evidence of a mental illness is proper evidence to reflect
on a witness' credibility, Mumphrey's specific proffer here was not evidence of a mental
illness. We therefore agree with the trial court that such evidence was not relevant. If
Mumphrey's purpose was to show Reedy's mental condition, that condition was shown by
other evidence. Reedy testified on direct examination she is a paranoid schizophrenic. 
She also testified that her illness resulted in "major depression" and caused her to "hear
voices." The evidence proffered by Mumphrey did not show Reedy's mental condition, but
even if it did, it would have been cumulative. See Tex. R. Evid. 403. 
          Further, the trial court was within its discretion in excluding this proffered evidence
on the basis that such testimony would be prejudicial or run the risk of confusion of the
issues. Tex. R. Evid. 403. The trial court kept the focus on the most relevant issues and
did not allow Mumphrey to bring in collateral matters concerning the couple's relationship. 
We do not find an abuse of discretion in excluding the cumulative, potentially prejudicial
or confusing evidence of Reedy's suspicion that Mumphrey had another girlfriend. We
overrule Mumphrey's contention.
          4.       Evidence of Reedy and Mumphrey's Reconciliation
          Before his cross-examination of Reedy, Mumphrey also alerted the trial court of his
intent to question Reedy on the issue of her reconciliation and continued relationship with
him after this assault:
[DEFENSE].Okay. I think it's already been covered. And it
was brought up about her, you know, not being together with him, and we're
certainly going to bring in that they got back together. I don't know if that's
extraneous but --
 
THE COURT.Since this offense occurred?
 
[DEFENSE].Yes.
 
THE COURT.Not relevant.
Mumphrey argued that, because the State had questioned Reedy on the length and nature
of the couple's relationship before the incident, the State had opened the door to such
testimony. The trial court repeated its conclusion that an alleged reconciliation was "not
relevant to whether or not this event happened" and went on to explain that any testimony
from direct examination regarding the nature of the couple's relationship related only to the
time before the assault and that such testimony did not open the door to allow evidence
of reconciliation after the assault. 
          The excluded evidence in this case is that type for which the proponent must make
an offer of proof to preserve error. This evidence was designed to elicit certain specific
responses, responses which would not have any bearing on Reedy's bias, interest,
prejudice, inconsistent statements, traits of character affecting credibility, or evidence that
might go to any impairment or disability affecting credibility.
          The record does not contain an offer of proof of the evidence about which
Mumphrey complains.


 Without such an offer, we cannot determine whether there was
error in its exclusion. See Hambrick, 11 S.W.3d at 243. We overrule Mumphrey's
contention. 
          5.       Evidence of Reedy's Prior Assaults on Mumphrey
          Mumphrey urged the trial court to allow testimony of prior assaults by Reedy against
him to show her "bias or prejudice" or to reveal her "motive to fabricate" this incident. The
trial court concluded that, based on the evidence before the court at the time, such alleged
incidents were not relevant. 
          a.       Complaint Preserved for Review
          Viewing the record and applying the law on preservation of error in a manner
consistent with the approach enunciated in Virts, we conclude Mumphrey did preserve this
complaint for appeal. See Virts, 739 S.W.2d at 28–29. The testimony at issue was aimed
at revealing Reedy's bias or motive to fabricate and, therefore, trial counsel preserved error
when he demonstrated the general subject matter about which he wanted to cross-examine Reedy. Id.
          b.       No Error in Exclusion of Evidence
          The Rules of Evidence provide:
Specific instances of the conduct of a witness, for the purpose of attacking
or supporting the witness' credibility, other than conviction of crime as
provided in Rule 609, may not be inquired into on cross-examination of the
witness nor proved by extrinsic evidence.

Tex. R. Evid. 608(b).

          Under Rule 609, a prior criminal conviction can be used to attack the credibility of
a witness only if the crime was a felony or involved moral turpitude. Tex. R. Evid. 609(a). 
There was no showing that any of Reedy's alleged assaults on Mumphrey resulted in a
felony conviction or was a crime involving moral turpitude. Such alleged assaults were
therefore not admissible under this rule.
          Mumphrey contends, however, that such alleged assaults were admissible to show
Reedy's "bias or prejudice" or to reveal her "motive to fabricate" this incident. We
recognize the trial court's wide latitude to limit cross-examination out of concern for
harassment, prejudice, or confusion of issues. Although evidence of alleged prior assaults,
for which there were no charges, arguably might have some bearing on Reedy's motive to
fabricate, the danger is much higher that such evidence would serve to confuse the matters
before the jury. See Tex. R. Evid. 403. Evidence regarding Reedy's alleged, unreported
assaults against Mumphrey necessarily brings with it collateral matters beyond the purpose
stated by trial counsel. The trial court's ruling regarding this evidence centered on
relevance and did not fall outside the zone of reasonable disagreement. Salazar, 38
S.W.3d at 151. The trial court did not abuse its discretion by excluding this evidence. We
overrule Mumphrey's point of error to the contrary.
II.       JURY ARGUMENT
A.       Improper Jury Argument
          Mumphrey complains of the following argument the State made to the jury:
Ms. Reedy's emotional condition on the tape, you guys saw that. You saw
how scared she was, how she was crying. She was very scared of the
defendant at this time.

Mumphrey seizes on the language "at this time" to contend the State indicated that Reedy
was scared of Mumphrey at the time of trial. Mumphrey objected to the argument after the
jury retired to deliberate. 
          The trial court understood the State's argument to refer to that time, a reference to
the time immediately following the assault and during the videotaped interview. Mumphrey
requested an opportunity to reopen in order to address the argument and to offer the
previously excluded evidence of reconciliation. The trial court refused his request. 
B.       Mumphrey Did Not Preserve Error
          Generally, an objection must be made as soon as the ground for objection becomes
apparent. Ford v. State, 500 S.W.2d 827, 829 (Tex. Crim. App. 1973). More specifically,
in order to preserve jury argument error, an objection to the improper argument must be
made at the time of the argument. Valencia v. State, 946 S.W.2d 81, 83 (Tex. Crim. App.
1997); Johnson v. State, 604 S.W.2d 128, 132–33 (Tex. Crim. App. [Panel Op.] 1980);
Joines v. State, 482 S.W.2d 205, 208 (Tex. Crim. App. 1972). An objection to the state's
argument made after the jury has retired does not preserve error. Castillo v. State, 362
S.W.2d 320, 322 (Tex. Crim. App. 1962).
          Here, defense counsel objected to the State's closing argument following what
constitutes a full page in the record of further argument by the State and after the jury was
excused to deliberate. Therefore, the error in the State's argument, if any, is not properly
before this Court for review.
III.      INEFFECTIVE ASSISTANCE OF COUNSEL
          Mumphrey cites several alleged errors as rendering trial counsel's performance
deficient.


 He concedes that for many such alleged errors there may have been a tactical
reason for those acts or omissions. He focuses his argument, however, on trial counsel's
failure to "protect the record" by making an offer of proof regarding the excluded evidence. 
          In order for an appellant to show he or she received ineffective assistance of
counsel, such appellant must satisfy a two-pronged test: 1) it must be shown that
counsel's performance fell below an objective standard of reasonableness by identifying
acts or omissions showing that counsel's performance was deficient; and 2) it must be
shown that, but for counsel's deficient performance, there is a reasonable probability that
the outcome of the proceedings would have been different. Strickland v. Washington, 466
U.S. 668, 687 (1984); Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).
          Having concluded Mumphrey's trial counsel did preserve error with respect to at
least two of the three instances of which Mumphrey complains, we must determine whether
counsel's performance was deficient based on his failure to preserve error with respect to
evidence of Reedy and Mumphrey's reconciliation after the assault. 
          We hold the trial court's determination that evidence of reconciliation was irrelevant
was not an abuse of discretion, even if the error would have been properly before us. 
Having failed to demonstrate that evidence of reconciliation was admissible in this context,
Mumphrey has failed to demonstrate that counsel's performance fell below an objective
standard of reasonableness and, subsequently, would be unable to demonstrate a
reasonable probability that, but for the failure, the trial's outcome would have been
different.


 This point of error is overruled.
IV.     SUMMARY AND CONCLUSION
          Mumphrey's claimed error in allowing Strickhausen to express an opinion on
whether an assault had occurred was not preserved. Reedy's statements to Strickhausen
at the scene and the videotaped statements she made within one hour of the assault were
admissible under the excited utterance exception to the rule against hearsay. The trial
court's refusal to allow Mumphrey to replay the videotape was not an abuse of discretion. 
Neither was it an abuse of discretion to exclude evidence Reedy was suspicious that
Mumphrey had another girlfriend or that Reedy had assaulted Mumphrey. Complaint about
the exclusion of evidence that Mumphrey and Reedy reconciled after the assault was not
preserved for our review. Mumphrey also failed to preserve his complaint concerning the
State's closing argument. Despite the failures to preserve alleged error, Mumphrey
received effective assistance of counsel.
          We affirm the judgment.
 
 
                                                                Donald R. Ross
                                                                Justice

Date Submitted:      August 6, 2004
Date Decided:         January 19, 2005

Publish